**Laurie LONG, Appellant,**

v.

**Curtis LONG, Appellee.**

**No. 08–02–00225–CV.**

Court of Appeals of Texas, El Paso.

June 17, 2004.

---

Roy L. Bell, Law Offices of Roy Bell, Odessa, TX, for Appellant.

Randall W. Reynolds, District Attorney, Pecos, TX, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a suit to modify parent-child relationship. For the reasons stated, we affirm.

## I. SUMMARY OF THE EVIDENCE

Appellant, Laurie Long, and Appellee, Curtis Long, were divorced June 2, 2000, in Reeves County. Pursuant to the decree of divorce, Laurie and Curtis were appointed joint managing conservators of their two daughters, Dakota Lynn and Sierra Morgan (collectively "the girls"). Laurie was given the right to determine domicile. The decree included a standard possession order for visitation rights and general terms and conditions of visitation. Curtis was ordered to pay child support in the amount of $600 a month.

On August 31, 2001, Curtis filed a petition seeking modification of the parties' joint managing conservatorship awarding him the exclusive right to establish the primary residence of the children and the right to receive child support, or in the alternative, sole managing conservatorship. Laurie filed a general denial and also filed a petition seeking modification of the parties' joint managing conservatorship seeking an increase in Curtis' child support payments.

A bench trial was held on January 17, 2002 and on March 21, 2002. In its April 5, 2002 order, the trial court found that modification was in the best interest of the girls and continued the parties' joint managing conservatorship. However, Curtis was awarded the exclusive right to establish the primary residence of the girls without regard to geographic location and the right to receive child support. Laurie was also ordered to provide medical support for the girls.

Laurie filed a motion for new trial which was denied by the trial court. Laurie timely filed a notice of appeal. No findings of fact were requested or entered.

## II. DISCUSSION

Laurie presents two issues on appeal. She first challenges the legal and factual

sufficiency of the evidence to support the modification. In her second issue, Laurie alleges the trial court abused its discretion in modifying the parties' joint managing conservatorship of the children because the evidence was legally and factually insufficient.

### A. Standards of Review

Where, as here, the sufficiency-of-the-evidence and abuse-of-discretion standards of review overlap, as they frequently do in family law cases, appellate courts employ a hybrid analysis. *Jenkins v. Jenkins,* 16 S.W.3d 473, 477 (Tex.App.-El Paso 2000, no pet.).

■■■■ In considering the legal sufficiency of the evidence, an appellate court considers only the evidence that supports the trial court's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Jenkins,* 16 S.W.3d at 477. If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In reviewing factual sufficiency, we examine all the evidence and reverse only if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *King's Estate,* 244 S.W.2d at 660; *Lindsey v. Lindsey,* 965 S.W.2d 589, 591 (Tex.App.-El Paso 1998, no pet.). In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Lindsey,* 965 S.W.2d at 591. The reviewing court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Id.* When findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984). In the absence of findings and conclusion, the judgment of the trial court implies all necessary fact findings in support of the judgment. *Id.*

■■■■ A trial court's order modifying a joint managing conservatorship will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982); *Jenkins,* 16 S.W.3d at 477. The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner, or whether it acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The fact that a trial court may decide a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Downer,* 701 S.W.2d at 241–42. The question of conservatorship of a child is left to the sound discretion of the trial court when it sits as trier of fact. *Jeffers v. Wallace,* 615 S.W.2d 252, 253 (Tex.Civ.App.-Dallas 1981, no writ). The trial court is in the best position to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record. *Id.* Thus, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Jenkins,* 16 S.W.3d at 477 (citing *Valdez v. Valdez,* 930 S.W.2d 725, 731 (Tex.App.-Houston [1st Dist.] 1996, no writ)).

■■■■ Once it has been determined that the abuse-of-discretion standard applies, an appellate court engages in a two-pronged inquiry: (1) whether the trial

court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Lindsey*, 965 S.W.2d at 592. The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there. *Id.* The appellate court then proceeds *to* determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* Stated inversely, the appellate court must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Id.; see also, In re De La Pena*, 999 S.W.2d 521 (Tex.App.-El Paso 1999, no pet.).

███ Family Code Section 156.101 specifies that a court may modify an order that provides for the appointment of a conservator of a child if modification would be in the best interest of the child and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition of the order. Tex. Fam.Code Ann. § 156.101 (Vernon 2002). The Legislature has made clear that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam.Code Ann. § 153.002 (Vernon 2002). Courts may use the nonexhaustive list of *Holley* factors to determine the child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976); *see also In re Doe 2*, 19 S.W.3d 278, 300 n. 20 (Tex.2000) (recognizing that intermediate courts employ the *Holley* factors to ascertain best interest in conservatorship cases). Those factors include, but are not limited to:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley*, 544 S.W.2d at 371–72. The Texas Supreme Court expressly stated in *Holley*, and recently reiterated in *In re C.H.*, that these considerations are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex.2002); *Holley*, 544 S.W.2d at 371–72. In the context of custody modification, other factors to be considered include the child's need for stability and the need to prevent constant litigation in child custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex.2000). In the specific context of relocation litigation, additional factors to be considered include, but are not limited to, the following:

· the degree to which the custodial parent's and the child's life may be enhanced economically, emotionally, and educationally by the move;

· a comparison of the quality of lifestyle;

· the negative impact of any continued hostility between the parents;

· the effect of the move on extended family relationships; and

· the child's age, community ties, health and educational needs, and preferences.

*Bates v. Tesar*, 81 S.W.3d. 411, 434 (Tex. App.-El Paso 2002, no pet.).

## B. Application of Best Interest Factors

 Prior to addressing these factors, we note and emphasize, that the record does not show that findings of fact or conclusions of law were either requested or filed. In a non-jury trial where no findings of fact or conclusions of law are filed or properly requested, it is implied that the trial court made all necessary findings to support its judgment. *Pharo v. Chambers County, Texas,* 922 S.W.2d 945, 948 (Tex.1996); *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). As noted previously, in the absence of findings and conclusion, the judgment of the trial court implies all necessary fact findings in support of the judgment. *In re W.E.R.,* 669 S.W.2d at 717. We also note that the trial court interviewed the children in chambers but that no record of their conversation was made. Without a record, we must presume facts existed that allowed the trial judge to find that a change in the girls' primary residence was in their best interest. *Voros v. Turnage,* 856 S.W.2d 759, 763 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (holding, in a custody suit, that the failure of a party to request a record of an interview of a child in chambers waives the requirement and that the reviewing court will presume the evidence is sufficient to support the judge's findings).

### (1) The desires of the children

The trial court interviewed the children in chambers but no record of their conversation was made. Curtis offered drawings made by the girls which he alleged reflected their desires as to where they wanted to live. Laurie's trial counsel objected and the trial court stated that it would wait to "see if they are useful if the children are interviewed." The trial court failed to rule on the objection and never admitted the exhibits into evidence. Laurie subsequently filed a motion to strike the exhibits from the reporter's record. This Court granted the motion on March 7, 2003. Thus the only evidence of the girls' desires regarding conservatorship was that of Curtis' wife, Jessie. Jessie testified that the girls have always indicated they are happy when they are with them in Pecos. She stated that the girls enjoy their visits and are sometimes sad when they have to leave.

### (2) The emotional and physical needs of the children now and in the future

Curtis testified that when the girls are with him, they enjoy activities such as riding bikes and horses, playing tennis and soccer, and going camping, roller blading and swimming. Jessie testified that they have made preparations for the girls with prospective school personnel. Curtis and Jessie have prepared a room in their home for the girls as well. Curtis testified that the girls were healthy. Curtis' mother, Janice Long, testified that Jessie is a positive and calm person who works with the children and that she was dedicated to the family. Curtis testified that the girls would not attend daycare if they lived with him because Jessie's work day ended at 3 p.m. and she would be able to pick them up from school and care for them.

Several witnesses testified the physical needs of the girls were being met by Laurie. Laurie's brother, Jason Sharp, testified that Laurie and the girls had a good relationship, that the girls were healthy, well-adjusted and active. Emily Ann Hogue, Laurie's aunt, described Laurie as a normal, loving mother. Hogue testified that the girls appeared happy, loving, well-adjusted, healthy and active. She stated there was nothing she had seen or heard that would indicate the girls were not per-

fectly safe with Laurie. Laurie testified that the YMCA bus picked the girls up from school each day and took them to the YMCA until she arrived to pick them up, usually by 5 p.m.

### (3) The emotional and physical danger to the children now and in the future

The only evidence of any physical danger was the testimony of Curtis that on one occasion, Dakota complained that her feet were hurting and he noticed that her shoes were too small. He purchased larger shoes. Laurie testified Dakota had never complained to her that the shoes were too little. She stated that Dakota did not want to wear the shoes that Curtis purchased. In fact, Dakota was wearing the "old" shoes the day of the hearing.

### (4) The parental abilities of the individuals seeking custody

There was an abundance of evidence introduced regarding the parental abilities of Curtis, Laurie and Jessie. Curtis and his mother, Janice, testified that his parenting skills had improved since the divorce. The witnesses who had contact with Laurie testified she exhibited excellent parenting skills and that the girls were her first priority. Jessie was the only witness who questioned Laurie's parental abilities. Jessie testified, "I don't know that I would call her a bad mother. I feel like there are some things that she could do to improve maybe what the girls express to me." She went on to say that she "had some concerns" as to whether Laurie provided for the girls in every way possible.

### (5) The programs available to assist these individuals to promote the best interest of the children

Curtis presented no evidence that different or better programs were available in Pecos than those in Odessa. Curtis and Jessie testified they planned to enroll the girls in tennis and swimming lessons. Laurie testified that she planned to enroll the girls in soccer and gymnastics in the Spring of 2002. The girls were involved in Awanas Club on Wednesday nights at Sunset Heights Baptist Church and attended Sunday services with Laurie there as well. The elementary school the girls attended, Noel Elementary, had a good academic program and both girls were making A's and B's.

### (6) The plans for the children by the individuals seeking custody

Both Curtis and Laurie testified they would encourage the girls relationship with the other parent. Both stated they would make the girls a priority in their respective lives. Both planned to enroll or keep the girls enrolled in a school with strong academic programs. Both testified that the girls would be enrolled in extracurricular activities.

### (7) The stability of the home or proposed placement

Witnesses for both Laurie and Curtis testified they each maintained good, stable homes. Laurie's witnesses testified that it was in the best interest of the girls to remain living with her in Odessa.

### (8) The acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent

There was no evidence introduced of an act or omission by either party.

Given the standard of review under which we must work, we find there is

legally and factually sufficient evidence, however slight, to support the trial court's order. Without findings of fact and conclusions of law, the judgment of the trial court implies all necessary fact findings in support of the judgment. *In re W.E.R.*, 669 S.W.2d at 717. Considering that the trial court interviewed the children in chambers, we must presume facts existed to support the modification and that allowed the judge to find that change in the girls' primary residence was in their best interest. Accordingly, the trial court did not abuse its discretion. Issues No. One and Two are overruled and the judgment of the trial court is affirmed.[1]

---

1. Given the standard of review and our disposition of the issues, we need not address the relocation factors.