Opinion issued October 26, 2006

















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00798-CV




SHEILA RENA PATTERSON, Appellant

V.

CLINT ALLEN BRIST, Appellee




On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2004-17094




DISSENTING OPINION
          The majority opinion misconceives and misapplies the standard of review of
modification of conservatorship of a child. It affirms a clearly arbitrary and
capricious trial court judgment that removed a fit mother as sole managing
conservator of her child and appointed the father as primary conservator with the
right to establish residency solely on the basis of a 12-year-old child’s stated
preference for living with his father, although the change was unjustifiable under all
applicable legal criteria. Because I believe the majority opinion is both wrong on the
law and manifestly unjust on the facts, and because it puts this Court squarely in
opposition to the well-established standard of review of modification of
conservatorship adopted by the Texas Supreme Court, by all other intermediate
appellate courts, and previously by this Court, I dissent.
          I would reverse the judgment of the trial court and render judgment that the
prior conservatorship order and child support order be reinstated, together with the
order of criminal contempt entered against the father, Clint Brist, for failure to pay
child support and to maintain health insurance on the child, C.A.B. 
FACTS
          The majority omits numerous facts material to the correct disposition of this
case under applicable law. The omitted procedural facts are recited here, and the
evidentiary facts are reviewed below. 
          Sheila Patterson and Brist were divorced when their son, C.A.B., was 1 year
old. Patterson was appointed sole managing conservator of C.A.B., and Brist was
appointed possessory conservator and ordered to pay child support. The trial court’s
judgment in the suit for modification of conservatorship (SAPCR) giving rise to this
appeal removed Patterson, C.A.B.’s mother, as sole managing conservator, appointed
C.A.B.’s father, Brist, as joint managing conservator with the exclusive right to
determine C.A.B.’s residence, and ordered Patterson to pay 20% of her net resources
to Brist for child support.
          At the time suit was filed, C.A.B. was 11 years old and had lived with his
mother, Patterson, and apart from his father, Brist, since the age of one. Brist, who
had been denied standard visiting rights in the original conservatorship decree,
originally brought this suit in 2004 only to increase his visitation rights. At the time,
he was in arrears in making child support payments and had failed to maintain health
insurance on C.A.B., as ordered by the trial court. After Brist’s suit was filed,
Patterson filed a motion to increase child support, and the State of Texas intervened
and brought a contempt action against Brist seeking a judgment for arrearages for
child support and almost $2,000 in health insurance premiums. Brist then moved to
be named joint conservator with the right to designate C.A.B.’s residence. C.A.B.,
having turned 12 years old, then filed his request to live with his father.
          While Brist denied that his desire to be named primary conservator was to
avoid paying child support, he admitted that he had voluntarily left his job making
$40,000 two years prior to the modification hearing, had made only $5,800 the
previous year as a self-employed exterminator, and expected to make between
$18,000 and $20,000 in 2005. Indeed, after Brist left his job, he went on welfare and
medicaid, and C.A.B. was placed in the CHIP’s program. At the time of the
modification hearing, Patterson was maintaining health insurance on C.A.B. and Brist
was not. 
          At the beginning of the hearing on modification of conservatorship, an
agreement between the parties was read into the record under which Brist was to be
held in criminal contempt of court for failure to pay arrearages in the amount of
$734.35, plus $1,935.18 in unreimbursed health insurance premiums on C.A.B. Brist
was to be sentenced to 30 days in jail, probated for 16 months on condition that he
pay Patterson $734.35 and $500 in attorney’s fees immediately, on June 10, 2005, and
another $500 and court costs on July 15, 2005, and that he make monthly payments
to Patterson of $168.24 beginning August 1, 2005 for 9 months and afterwards make
three payments of $140.34, for a total amount of $2,600 (or half of his total income
the previous year). After questioning Brist about his understanding of the terms of
the contempt agreement, the trial court approved the agreement. However, at the
conclusion of the hearing the trial court ordered that Brist be named joint managing
conservator, that C.A.B. live with him, and that Patterson pay Brist 20% of her net
resources for C.A.B.’s support, presumably negating the contempt finding.
          The only findings of fact made by the trial court were (1) that it was in the best
interest of the child, C.A.B., that his parents be appointed joint managing
conservators and that his father, Brist, have the exclusive right to designate C.A.B.’s
primary residence and (2) that C.A.B. had filed a preference with the court asking that
his father, Brist, rather than his mother, Patterson, establish his primary physical
residence. In accordance with its change of conservatorship, the trial court found that
the periods of possession it was awarding Patterson complied with the Standard
Possession Order and that the amount of child support it ordered her to pay was “in
accordance with the percentage guidelines,” namely, 20% of her net resources. 
STANDARD OF REVIEW

          The correct standard of review of a district court judgment modifying
conservatorship is well established. An appellate court reviews a trial court’s
modification of joint managing conservatorship of a child under an abuse of
discretion standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Long
v. Long, 144 S.W.3d 64, 67 (Tex. App.—El Paso 2004, no pet.); In re T.D.C., 91
S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied); Bates v. Tesar, 81
S.W.3d 411, 425 (Tex. App.—El Paso 2002, no pet.). The trial court abuses its
discretion if it acts arbitrarily and unreasonably or without reference to any guiding
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex.
1985), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279 (1986); Long, 144 S.W.3d at 67;
In re T.D.C., 91 S.W.3d at 872; Bates, 81 S.W.3d at 425. Legal and factual
sufficiency of the evidence are not independent grounds of error, but relevant factors
in determining whether the trial court abused its discretion. In re T.D.C., 91 S.W.3d
at 872; Bates, 81 S.W.3d at 425; In re Marriage of Bertram, 981 S.W.2d 820, 822
(Tex. App.—Texarkana 1998, no pet.). 
          In determining whether the trial court abused its discretion in modifying
conservatorship, the appellate court applies a two-pronged test: “(1) whether the trial
court had sufficient information on which to exercise its discretion and (2) whether
the trial court erred in its application of discretion.” Long, 144 S.W.3d at 67–68. 
That is, the reviewing court determines, first, whether the evidence was legally and
factually sufficient for the trial court to support a decision on modification and,
second, whether the decision made was reasonable. See Long, 144 S.W.3d at 68. A
clear failure by the trial court to analyze or apply the law to the facts correctly is an
abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); In re
M.N.G., 113 S.W.3d 27, 32 (Tex. App.—Fort Worth 2003, no pet.). 
          In conducting a legal sufficiency, or “no evidence” review, we consider the
evidence in the light most favorable to the trial court’s judgment, disregarding all
evidence and inferences to the contrary unless reasonable jurors could not do so. City
of Keller v. Wilson, 168 S.W.3d 802, 810–11 (Tex. 2005); see also Bates, 81 S.W.3d
at 425. We do not disregard contrary evidence if (a) there is no favorable evidence,
or (b) contrary evidence renders supporting evidence incompetent, or (c) contrary
evidence conclusively establishes the opposite. City of Keller, 168 S.W.3d at 810–11. 
Anything more than a scintilla of probative evidence is legally sufficient to support
the trial court’s finding. See Long, 144 S.W.3d at 66; In re T.D.C., 91 S.W.3d at 872.
          In determining whether the evidence was factually sufficient to support the trial
court’s judgment, the court of appeals reviews the trial court’s findings under the
same standards used in reviewing jury answers. In re Z.B.P. and J.N.P., 109 S.W.3d
772, 776–77 (Tex. App.—Fort Worth 2003, no pet.); Bates, 81 S.W.3d at 426. We
consider all the evidence and set aside the findings only if we find that they are so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re Z.B.P. and
J.N.P., 109 S.W.3d at 777; Bates, 81 S.W.3d at 425–26. 
MODIFICATION OF CONSERVATORSHIPWith only a brief reference to the standard of review of modification orders,
and with virtually no legal analysis or any reference to controlling law,


 the majority
concludes that a court may modify a child conservatorship order merely by
determining that a 12-year-old child has filed with the court the name of the person
with whom the child prefers to live and then deciding on its own that modification is
“in the best interest of the child.” That is an incorrect analysis of the law.
          Section 156.101 of the Family Code, governing modification of
conservatorship of a child, provides, 
The court may modify an order or portion of a decree that
provides for the appointment of a conservator of a child, that provides
the terms and conditions of conservatorship, or that provides for the
possession of or access to a child if modification would be in the best
interest of the child and: 
 
 (1) the circumstances of the child, a conservator, or other party
affected by the order have materially and substantially changed
since the date of the rendition of the order;
 
 (2) the child is at least 12 years of age and has filed with the
court, in writing, the name of the conservator who is the child’s
preference to have the exclusive right to determine the primary
residence of the child; or 
 
 (3) the conservator who has the exclusive right to establish the
primary residence of the child has voluntarily relinquished the
primary care and possession of the child to another person for at
least six months.

Tex. Fam. Code Ann. § 156.101 (Vernon 2002). 
          Texas provides that “[t]he best interest of the child shall always be the primary
consideration of the court in determining the issues of conservatorship and possession
and access to the child.” Id. § 153.002 (Vernon 2002); Lenz v. Lenz, 79 S.W.3d 10,
14 (Tex. 2002) (reiterating legislature’s mandate that best interest of child is primary
consideration); In re C.Q.T.M., 25 S.W.3d 730, 734 (Tex. App.—Waco 2000, pet.
denied); Long, 144 S.W.3d at 68; In re Marriage of Bertram, 981 S.W.2d at 822
(“court’s primary consideration in determining conservatorship, possession, and
access is the best interest of the child”). 
          A party seeking to alter conservatorship of a child must, therefore, come
forward with evidence concerning the best interest of the child that has developed
since the initial conservatorship order, since the appointment of the existing
managing conservator is res judicata as to the best interest of the child at the time of
the original decree awarding conservatorship. See Knowles v. Grimes, 437 S.W.2d
816, 817 (Tex. 1969) (once conservatorship order has been implemented, that order
establishes what was in best interest of the child at time of divorce and res judicata
attaches); Ogletree v. Crates, 363 S.W.2d 431, 434 (Tex. 1963); In re P.D.M. and
K.E.M., 117 S.W.3d 453, 463 (Tex. App.—Fort Worth 2003, pet. denied); In re
M.N.G., 113 S.W.3d at 33–34; Bates, 81 S.W.3d at 421; Scroggins v. Scroggins, 753
S.W.2d 830, 832 (Tex. App.—Houston [1st Dist.] 1988, no writ).
          The State has a compelling interest in protecting the child’s need for stability
and in preventing constant litigation. In re M.N.G., 113 S.W.3d 27, 36 (Tex.
App.—Fort Worth 2003, no pet.); see also Mumma v. Aguirre, 364 S.W.2d 220, 221
(Tex. 1963) (citation omitted) (“the law favors a high degree of stability in a young
child’s home and surroundings, and to achieve that stability will not permit change
of custody, once judicially determined, except upon showing of materially changed
conditions, . . . and will not require it, even then, unless denying it would constitute
an abuse of discretion by the trial judge.”); In re Marriage of Chandler, 914 S.W.2d
252, 254 (Tex. App.—Amarillo 1996, no writ) (“[T]he state maintains a paramount
interest in fostering a stable home environment for children.”); Eason v. Eason, 860
S.W.2d 187, 190–91 (Tex. App.—Houston [14th Dist.] 1993, no writ) (same);
Scroggins, 753 S.W.2d at 832. Accordingly, the long-established rule in the Texas
courts is that, “[a]s a matter of public policy, there should be a high degree of stability
in the home and surroundings of a young child, and, in the absence of materially
changed conditions, the disturbing influence of re-litigation should be discouraged.” 
Knowles, 437 S.W.2d at 817. This public policy has been codified. See Tex. Fam.
Code Ann. § 153.001(a)(2) (“The public policy of this state is to . . . (2) provide a
safe, stable, and nonviolent environment for the child.”) (emphasis added). “Because
a change in custody usually disrupts the child’s living arrangements and the channels
of a child’s affection, and in effect alters the entire tenor of the child’s life, a change
should be ordered only when the trial court is convinced that a change is to be a
positive improvement for the child.” In re M.N.G., 113 S.W.3d at 36 (emphasis
added). There is no meaningful distinction between “best interest” and “positive
improvement.” In re T.D.C., 91 S.W.3d at 873 n.6; Turner v. Turner, 47 S.W.3d 761,
767 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
          Generally, in any type of case involving conservatorship or possession of a
child the best interest of the child is determined by consideration of the “Holley”
factors, namely:
          (A)    the desires of the child;
 
          (B)    the emotional and physical needs of the child now and in the
future;
 
          (C)    the emotional and physical danger to the child now and in the
future;
 
          (D)    the parental abilities of the individuals seeking custody;
 
          (E)     the programs available to assist these individuals to promote the
best interest of the child;
 
          (F)     the plans of the child by these individuals or by the agency
seeking custody;
 
          (G)    the stability of the home or proposed placement;
 
          (H)    the acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper one; and 
 
          (I)      any excuse for the acts or omissions of the parent.

See Long, 144 S.W.3d at 68; Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976)
(listing best interest factors in context of suit for termination of parental rights). 
          The courts have added other factors that should be considered in determining
whether modification of a prior conservatorship order is in the child’s best interest,
particularly when the case involves a request to change the designation of the
managing conservator with the right to determine the residency of the child or
involves relocation. See Long, 144 S.W.3d at 68. Thus, in determining the child’s
best interest in the specific context of modification of conservatorship, the courts
consider additional factors:
          (J)      the child’s need for stability; and
          (K)    the need to prevent constant litigation in child custody cases.
Long, 144 S.W.3d at 68; see also In re V.L.K., 24 S.W.3d 338, 343 (Tex. 2000).
          Finally, to determine the best interest of the child in the specific context of
relocation litigation, the courts consider yet more factors, including but not limited
to the following:
          (L)     the degree to which the custodial parent’s and the child’s life may
be enhanced economically, emotionally, and educationally by the
move;
 
          (M)    a comparison of the quality of lifestyle;
 
          (N)    the negative impact of any continued hostility between the
parents; 
 
          (O)    the effect of the move on extended family relationships; and
 
          (P)     the child’s age, community ties, health and education needs, and
preferences.

Long, 144 S.W.3d at 68; see also Bates, 81 S.W.3d at 434. These factors are not
exhaustive or exclusive. See Holley, 544 S.W.2d at 372; Long, 144 S.W.3d at 68.
Application of the Law to the Facts
          Although the majority recites the Holley factors, it makes no attempt to
determine whether the evidence was legally and factually sufficient under the
guidelines established by the those factors to ensure that the change in
conservatorship wrought by the trial court’s modification order would be a positive
change from the prior conservatorship order, i.e., a change in the best interest of
C.A.B. , as required for modification of conservatorship under section 156.101. See
In re M.N.G., 113 S.W.3d at 36; In re T.D.C., 91 S.W.3d at 873; Turner, 47 S.W.3d
at 767. In other words, the majority does not compare the evidence in favor of
retaining the prior conservatorship order with the evidence in favor of modification
to determine whether it is possible to draw a reasonable inference that modification
would be a positive improvement for C.A.B. under those factors. The majority
simply ignores the purpose and teaching of Holley and its extensive progeny. See
Holley, 344 S.W.2d at 370 (stating, in terms equally applicable in all conservatorship
matters, “Termination of a parent-child relationship may not be based solely upon
what the trial court determines to be the best interest of the child,” and listing non-exhaustive list of factors to consider in determining whether termination would be in
child’s best interest); see also In re Aubin, 29 S.W.3d 199, 260 (Tex.
App.—Beaumont 2000, no pet.) (quoting Troxel v. Granville, 530 U.S. 57, 120 S. Ct.
2054, 2064 (2000) (“‘The Due Process Clause does not permit a State to infringe on
the fundamental rights of parents to make child-rearing decisions simply because a
state judge believes a ‘better’ decision could be made.’”)). 
          Moreover, the majority’s recitation of the evidentiary facts is selective and
materially misleading. The majority does not state that it is reviewing the record only
for evidence supporting the trial court’s judgment without making any attempt to
compare the child’s situation under the prior conservatorship order with his situation
under the modification order. Nor does it state that in employing this method of
reviewing the record it is omitting huge parts of the evidence contrary to the trial
court’s conclusion that modification was in C.A.B.’s best interest. The majority thus
ignores the mandate in City of Keller that an appellate court may not disregard
contrary evidence necessary to make the required legal determination (here, the
determination that change in conservatorship is warranted under appropriate
guidelines, i.e., the Holley factors) if (a) there is no favorable evidence, or (b)
contrary evidence renders supporting evidence incompetent, or (c) contrary evidence
conclusively establishes the opposite. See City of Keller, 168 S.W.3d at 810–11. 
          As shown below, if the majority had conducted the required legal analysis by
reviewing the sufficiency of the evidence under the Holley factors to determine
whether modification would be a positive improvement for C.A.B., and therefore in
his best interest, the only conclusions it could reasonably have reached were (1) that
the evidence presented at trial was factually and legally insufficient to satisfy the
statutory requirements for modification under section 156.101, since the conclusion
could not reasonably be drawn from the evidence that modification was a positive
improvement for C.A.B. and thus in his best interest and (2) that the trial court’s order
modifying conservatorship was, in fact, made without any meaningful reference to
the statutory mandate that a change in conservatorship must be in C.A.B.’s best
interest under the Holley factors, and was thus arbitrary and capricious.
 
          Holley Factor (A)
          It is undisputed that while Brist’s suit for modification was pending C.A.B.
turned 12 years old and signed an expression of his desire to live with his father,
Brist. Thus Holley factor (A) (the desires of the child) must be taken as conclusively
established in favor of modification. 
          Holley Factors (B), (C), (D), (E), (F)
          By contrast, the evidence presented relative to Holley factors (B) (emotional
and physical needs of the child now and in the future), (C) (emotional and physical
danger to the child now and in the future), (D) (parental abilities of the individuals
seeking custody), (E) (programs available to assist these individuals to promote the
best interest of the child), and (F) (plans for the child by these individuals) support
Patterson’s retention of managing conservatorship with the right to determine
C.A.B.’s residence over Brist’s appointment in her stead; none of this evidence
supports modification.
          The record shows that none of Brist’s provisions for C.A.B.’s mental,
emotional, and physical welfare are better than Patterson’s, as required to support
modification under Holley factors (B), (C), and (D). Rather, these factors support
retaining the prior conservatorship order. Patterson’s home, from which the trial
court removed C.A.B., provided a much more stable and supportive environment for
C.A.B. mentally, emotionally, physically, and economically than Brist’s home. The
record shows that C.A.B. had lived with Patterson and apart from Brist from the age
of one. Patterson is a vice-president and branch manager of a bank. She works
regular hours, 8:30 to 4:30 from Monday to Friday, and is normally home in the
evenings. She has remarried, and C.A.B. gets along well with his stepfather. The
family lives in an almost 3,000 square foot, two-story brick house on a cul-de-sac in
Baytown. C.A.B. has his own bedroom with access to a game room and a computer
room. Brist himself admitted at the hearing that Patterson had done an excellent job
raising C.A.B., that C.A.B. loved his mother, that he was getting straight A’s in
school, and that he had friends in the neighborhood.


 
          There was no evidence at the hearing, with respect to Holley factor (B), that the
quality of life would be better for C.A.B. in Brist’s home. To the contrary, he and his
current wife were living with her two sons from a previous marriage and their own
daughter in a three-bedroom 16' by 80' mobile home on a remote eight acre tract
owned by Brist’s family in east Chambers County. At Brist’s home, C.A.B. has to
share a bedroom with his two stepbrothers. Brist sometimes works as late as 6:00 or
7:00 p.m. and occasionally works weekends, and his wife also works during the day. 
          In addition, the record demonstrates that the health and educational programs
available to assist Brist in promoting the best interest of C.A.B. and the plans Brist
has for C.A.B. are far inferior to the programs available to C.A.B. when in Patterson’s
care and to Patterson’s plans for C.A.B.’s future, negating Holley factors (E) and (F)
as support for modification. First, C.A.B.’s educational opportunities are not better,
or even approximately equal, in Brist’s household. In his mother’s care, C.A.B. was
attending a school with excellent facilities and positively recognized by the Texas
Education Agency. C.A.B. was in the top 5% to 7% of his class and in an honors
program. He was actively involved in extra-curricular activities, played baseball, and
served on the student council. C.A.B. was scheduled to attend a junior high school
in the fall that is likewise recognized as a high-performing school. He had qualified
for the GATES program for gifted and talented children, under which students can
take college-level courses in high school, and he was pre-enrolled for four advanced
placement honors courses—in English, mathematics, history, and science. He was
also pre-enrolled in an athletic program and had signed up for shop. In addition,
C.A.B. had a well-established routine at his mother’s house. Either his mother or his
step-father was waiting each day when he arrived home from school by bus; he was
not allowed to watch television or talk on the telephone until after he had completed
his homework; and, after homework, he played baseball or football with his friends
or neighbors. 
          By contrast, Brist was not involved in C.A.B.’s school life, had not met
C.A.B.’s teachers, and did not know their names. Although an honors program is
available in the school in east Chambers County where Brist lives, no college-level
courses are available. Moreover, the record demonstrates that Brist lives too far in
the country for C.A.B. to participate in organized sports at school; and no one is
available to take him to sports other than C.A.B.’s stepmother, after she returns from
work as a school secretary, and then only by taking the other three children with her. 
C.A.B.’s stepmother admitted she does not read newspapers; and there was
unrebutted testimony by Patterson that Brist admitted homework would not be done
in his house; his house was for fun.
          Likewise, the evidence presented regarding health and safety concerns, Holley
factors (B) and (C), favored Patterson’s retention as managing conservator with the
right to determine C.A.B.’s residence, not her replacement by Brist. After Brist left
his job, he went on welfare and medicaid, and C.A.B. was placed in the CHIP’s
program. At the time of the modification hearing, Patterson was maintaining health
insurance on C.A.B., and Brist was not. Indeed, Brist was ordered to pay almost
$2,000 in unreimbursed health insurance premiums at the beginning of the
modification hearing or be put in jail. There was also unrebutted testimony from
Patterson that Brist does not pay great attention to whether C.A.B. gets his medicine
or not and that he did not have an inhaler available when C.A.B. got sick with asthma. 
Brist did not know the last time C.A.B. had his shots, did not know the last time he
had been to a doctor, did not know the doctor’s address, and misremembered the
doctor’s name. There was evidence that C.A.B. has asthma that is aggravated when
he becomes sick and that may be aggravated by the eight acre pasture at Brist’s home,
and Brist lives far from medical facilities. 
          With respect to safety, Holley factor (C), the majority observes that Patterson
let C.A.B. ride a gas powered motor scooter without a helmet in the cul-de-sac, and,
after he turned 11, she let him stay home alone in the summer or go to her father’s
house. These facts, however, are more than counter-balanced by testimony that Brist
lets C.A.B. drive a pickup in the pasture, either alone or with his stepbrothers, and
that he let C.A.B. play with firecrackers in a bottle, causing him to cut his arm, an
injury for which Brist failed to seek medical attention. Brist’s allowing C.A.B. to
drive a pickup truck is at least some evidence that he allows C.A.B. to put himself and
others in physical danger, as is Brist’s allowing C.A.B. to play with firecrackers in
a bottle.
          Brist has demonstrated no ability to meet the emotional or physical needs of
C.A.B. relative to Holley factor (B) other than love for his son—which is mutual, but
no greater than that between Patterson and C.A.B. Instead, the record demonstrates
that Brist relinquished a job in which he was able to provide financially for C.A.B.
and had health insurance for C.A.B.—which he was legally obligated to provide—to
go on welfare and now is self-employed and making an income substantially below
the poverty level;


 he has no insurance for C.A.B.; he defaulted in his court-ordered
child financial support and health care obligations; at the time of modification, he has
taken no interest in C.A.B.’s schooling and was unaware of who his teachers were or
how he was doing in school, despite C.A.B.’s great success in school; and he did not
know who C.A.B.’s doctor was and failed to provide treatment for C.A.B.’s asthma.
          When the evidence relevant to Holley factors (B) (C), (D), (E) and (F) in favor
of modification is weighed in light of the prior conservatorship order to determine
whether modification would be a positive improvement for C.A.B., hence in his best
interest, as required for modification of conservatorship, it is clear that no evidence
relevant to these factors supports modification. Nor does consideration of the
additional factors used to determine the best interest of a child in a modification and
relocation case support the trial court’s modification order or the panel majority’s
affirmance.
          Holley factors (H) and (I)
          Holley factor (H) (acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper one) and (I) (any excuse for the acts
or omissions of the parent) both patently favor retaining Patterson as sole managing
conservator over replacing her with Brist. When this suit was brought, Brist had left
his job, paying $42,000 a year, had an income that year of only $5,800, had been or
was on welfare, was behind in child support payments and in health insurance
premium payments, and had breached his parental duties to support C.A.B. and to
provide health insurance to him. These are positive acts and omissions in the record
that reflect extremely negatively on Brist’s understanding and performance of his
parental responsibilities to his son (Holley factor (H)). Brist’s inattention to C.A.B.’s
schooling and his inability even to name C.A.B.’s teachers or his doctor are further
indications that Brist lacks a proper parental relationship to his son. 
          Brist’s acts and omissions of lack of support for C.A.B. and lack of a sustained
interest in his welfare and development stand in stark contrast to the parenting
abilities and understanding of parental responsibilities and willingness to bear them
displayed by Patterson. Nor was any excuse provided by Brist or otherwise presented
by the record for Brist’s negative acts and omissions as a parent, as required by
Holley factor (I) to support modification. Again, there is no evidence under these
Holley factors that supports the inference that modification was in C.A.B.’s best
interest.
          Holley Factor (G) and Modification Factors (J) and (K)
          As stated above, “The public policy of this state is to . . . (2) provide a safe,
stable, and nonviolent environment for the child.” Tex. Fam. Code Ann. §
153.001(a)(2) (emphasis added). Accordingly, the rule in modification cases under
both statutory and case law is that “[a]s a matter of public policy, there should be a
high degree of stability in the home and surroundings of a young child, and, in the
absence of materially changed conditions, the disturbing influence of re-litigation
should be discouraged.” Knowles v. Grimes, 437 S.W.2d 816, 817 (Tex. 1969); see
also In re M.N.G., 113 S.W.3d at 33–34; Bates, 81 S.W.3d at 421. Thus, Holley
factor (G) (the stability of the home or proposed placement) must be considered by
the court in a modification case, as in any case involving conservatorship of a child, 
and before ordering a change from the previous conservatorship order the court
should also consider the additional factors relative to modification, including (J) (the
child’s need for stability) and (K) (the need to prevent constant litigation). See Long,
144 S.W.3d at 68; In re V.L.K., 24 S.W.3d at 343. 
          Nothing in the record of this case demonstrates that the trial court’s judgment
removing C.A.B. from Patterson’s home to Brist’s created a more stable environment
for C.A.B., as required by Holley factor (G) and modification factor (J). To the
contrary, the trial court’s order changing managing conservatorship with the right to
determine residency from Patterson to Brist upended the stability of the home in
which C.A.B. had lived since infancy and removed him not only from his mother’s
home, in which was thriving by all objective criteria, but also from his town; from his
school, where he participated in sports, was on the student council, and was a high
honors student; and from his neighborhood friends. The evidence that the trial
court’s order created instability where there was none before is indisputable. Nor is
there any evidence in the record that Patterson’s home was unstable or that Brist’s
was more stable. Thus, nothing in the record relevant to Holley factor (G) and
modification factor (J) (the child’s need for stability) supports modification. 
          Moreover, this multi-year litigation, plus Brist’s past history of failure to
support C.A.B. and to provide health care for him, his conviction for criminal
contempt, and his current precarious financial situation in attempting to care for 4
children on a reduced income all evince an unstable environment for C.A.B. in
general and with respect to litigation and the expenses of litigation and augur future
instability and future litigation. Not only was there no evidence at trial from which
the trial court could reasonably have drawn the inference that modification would
achieve greater stability for C.A.B. (modification factors (G) and (J)) or would
prevent litigation (modification factor (K)), all the evidence was to the contrary.
          Relocation Factors (L), (M), (N), (O), and (P)
          Finally, under the trial court’s order modifying conservatorship, C.A.B.’s
residence was changed from Harris County to east Chambers County, a change not
only of home, schools, friends, town, and county of residence, but also of trial and
appellate jurisdiction over future conservatorship proceedings. Thus, since this case
involves relocation, the trial court should have considered additional factors to
determine whether relocation was in C.A.B.’s best interest, namely (L) (the degree
to which the custodial parent’s and the child’s life might be enhanced economically,
emotionally, and educationally by the move), (M) (a comparison of the quality of
lifestyle), (N) (the negative impact of any continued hostility between the parents),
(O) (the effect of the move on extended family relationships), and (P) (the child’s age,
community ties, health and education needs, and preferences). 
          The record demonstrates with respect to (L) that C.A.B.’s life was not
improved economically, emotionally, or educationally by the move. He was removed
from an economically and emotionally stable home in which he was the only child
and had his own bedroom, study area and routine; in which he participated in sports
teams and school activities, including student council, and had neighborhood friends;
and in which he was enrolled in honors enrichment programs in an educationally
superior school in which he was making straight A’s. He was placed by the trial court
in an economically unstable home in which the custodial parent, Brist, was making
an income well below the poverty line, had been receiving welfare payments and
government-sponsored medical assistance, had failed to pay child support payments
or maintain health insurance for C.A.B., and had been held in criminal contempt by
the court and ordered to serve 16 months in jail unless he paid back child support and
health insurance premiums agreed upon in settlement of the claims of the former
custodial parent, Patterson, and the Attorney General. 
          The home to which C.A.B. was removed is a trailer on property owned by his
father’s family in which he must share a bedroom with his two stepbrothers; and it is
an isolated area of a rural county in which it is difficult for C.A.B. to participate in
after-school sports or other activities and for him to receive medical treatment. The
social, health-related, and educational opportunities are, therefore, much worse than
in Patterson’s home, although there is evidence that C.A.B. enjoys roping with his
step-brothers. Thus, it cannot have been for C.A.B.’s economic, emotional, or
educational benefit that this change of conservatorship was made. Indeed, the only
person who benefits emotionally and economically is Brist—who by court order
received a transfer of 20% of Patterson’s net resources (making her much worse off)
to supplement his own income and who, presumably, was likewise relieved of the
burden of making past child support payments and of the threat of going to jail. This
is a perversion of the standard of modification, not its fulfillment. 
          With respect to (M), the quality of C.A.B.’s lifestyle is patently worse in Brist’s
home, if quality of lifestyle is interpreted as stability of home, family, and friendships;
economic well-being; access to social and educational opportunities; and access to
health care. Similarly, with respect to (P), C.A.B.’s age, community ties, health and
educational needs were all ignored by the trial court and will all be adversely affected
by the court’s order and the majority’s affirmance. Only one of the subparts of
(P)—C.A.B.’s preference—supports modification. Otherwise, there is no evidence
that modification was a positive improvement for C.A.B., hence in his best interest. 
Instead, once again, all of the evidence with respect to the relevant conservatorship
factors—here, (L), (M), and (P)—shows that change of conservatorship was contrary
to C.A.B.’s best interest.
          There is no evidence in the record one way or the other with respect to the
remaining relocation factors (N), hostility between the parents, and (O), the effect of
the move on extended family relationships. Thus, factors (N) and (O) do not provide
any evidence that change of primary conservatorship was in C.A.B.’s best interest.
          The only reasonable inference from consideration of the relocation factors is
that modification was not in C.A.B.’s best interest and that the trial court’s order
removing Patterson as sole managing conservator and naming Brist joint managing
conservator with the exclusive right to determine C.A.B.’s residency was not
supported by any guiding rules or principles, specifically, those rules and principles
of law that govern modification of conservatorship of a child. Cf. Holley, 544 S.W.2d
at 373 (Refusing to terminate parental rights and stating, “[a] review of the factors
presented in the record reveals only evidence that indicates that termination is not in
the best interest of the child. There is no evidence that termination is in the best
interest of the child.”) (emphasis added).
          Factual and Legal Sufficiency of the Evidence Supporting Modification
          The only Holley factor, modification factor, or relocation factor for which the
evidence supports modification is Holley factor (A), “the desires of the child.” 
Specifically, the record contains C.A.B.’s written statement that he desired to live
with his father, and there was some evidence in the record that he may have been
unhappy with his mother because she refused to let him attend a championship
baseball game in which he might have been able to substitute for a player, on the
ground it would keep him up too late, and she objected to Brist’s letting him drive a
pickup truck, which was “fun.” This evidence, standing alone, is patently insufficient
to support modification. Rather, the trial court’s finding that modification was in the
best interest of C.A.B. was clearly against the overwhelming weight of the evidence
and manifestly wrong and unjust; and the trial court’s inference that modification
would be a positive improvement for C.A.B. and, therefore, in his best interest was
clearly unreasonable.
          Not only was the evidence factually insufficient to support a reasonable
inference that modification was in C.A.B.’s best interest, it was legally insufficient
to support such an inference. Under no Texas law, except the law now established
in this jurisdiction by the majority in this case, has the designation of a 12-year-old
child’s preference for conservator with the exclusive right to determine primary
residency been held sufficient to establish the child’s best interest. See In re Galliher,
546 S.W.2d 665, 667 (Tex. Civ. App.—Beaumont 1977, no writ) (change of
conservatorship is always subject to discharge of court’s primary obligation of
determining what is in best interest of child, and if, from consideration of record as
whole, court should determine that change in conservatorship is in best interest of
child, child’s designation will be given effect; otherwise, it may be ignored). Rather,
a child’s preference for living with one parent rather than the other has consistently
been considered in Texas jurisprudence to be only one factor, among many, relevant
to the determination whether modification is in the best interest of the child. See
Holley, 544 S.W.2d at 371–72 (listing “the desires of the child” as one of nine factors
in determining best interest); Long, 144 S.W.3d at 68 (listing desires of the child as
one of 16 factors in determining best interest in case seeking modification of
managing conservatorship in relocation context).
          Indeed, in 2001, this very Court held that a 15-year-old child’s expression of
a reasoned preference for living with the other parent in a proceeding to modify
conservatorship was only one of the relevant factors in determining whether a change
from sole managing conservatorship to joint managing conservatorship was in the
best interest of the child. Turner, 47 S.W.3d at 767. This Court stated, “We agree
with Mother’s contention that a child’s mere desire to live with the other, more
lenient parent would be legally insufficient standing alone to prove a retention of the
sole managing conservator would be detrimental to the child’s welfare.” Id. at 766. 
The majority now contradicts this Court’s precedent without explanation or citation
to any authority for its ruling.
          The majority opinion not only is wrong and manifestly unjust on the facts of
the case, it disregards and misapplies the legal standard of review of modification of
conservatorship, which requires that the evidence be legally and factually sufficient
under guiding principles of law to support a reasonable inference that modification
of a prior conservatorship order be a positive improvement for the child, hence in that
child’s best interest. The majority also ignores the binding precedent of this same
Court, which recognizes that the child’s preference of managing conservator, standing
alone, is legally insufficient to justify modification of conservatorship. No reasonable
inference could have been drawn from the evidence in the record of this case that
modification would be a positive improvement for C.A.B. and, therefore, in his best
interest. Thus, the trial court’s order removing Patterson as sole managing
conservator and appointing Brist as managing conservator with the right to establish
C.A.B.’s primary residence was clearly arbitrary and capricious.
REPLY TO CONCURRENCE
          The concurrence is equally disturbing. The concurring justice opines that
because the trial judge interviewed C.A.B. in chambers pursuant to section 153.009
of the Family Code and no record was made of that interview the appellate court must
presume that the facts the trial court uncovered outweigh all of the facts in the record
and support the trial court’s judgment, which the appellate court is powerless to
overturn. If this were a correct statement of Texas law, section 156.101 would be
unconstitutional, because it would permit a state court judge to remove a fit mother
as primary managing conservator of her child without evidence or notice of the
allegations against her on the mere presumption that her child would prefer a change
of conservatorship. See Troxel, 530 U.S. 57, 120 S. Ct. 2054, 2064 (2000) (applying
Due Process Clause to State’s to infringement on fundamental rights of parents to
make child-rearing decisions). However, this is an incorrect statement of the law.
          Section 153.009 of the Family Code permits a trial court to “interview in
chambers a child 12 years of age or older . . . to determine the child’s wishes as to
conservatorship or as to the person who shall have the exclusive right to determine
the child’s primary residence.” Tex. Fam. Code Ann. § 153.009(a) (Vernon Supp.
2005). On motion of a party or of the court, a record must be made and shall be part
of the record of the case if the child is 12 years of age or older. Id. § 153.009(f).           The concurrence misconstrues both section 156.101 and section 153.009 of the
Family Code. The cases it relies on state that if no record is made, the appellate court
must presume that facts existed which allowed the trial court to find that a change in
primary residence was in the child’s best interest. See Long, 144 S.W.3d at 69; Voros
v. Turnage, 856 S.W.2d 759, 763 (Tex. App.—Houston [1st Dist.] 1993, writ denied). 
Neither these cases nor any other Texas cases, however, hold that a placement
modifying conservatorship with the right to determine primary residency is
sufficiently supported by a 12-year old child’s affidavit regarding his wish to change
conservatorship and a trial court’s unrecorded interview with the child regarding the
basis for his wishes. Long, in fact, makes it plain that the appellate court must review
the evidence in the record to determine whether modification is in the best interest
of the child and that the wishes of the child—whether supported by a presumption of
fact from an unrecorded in-chambers interview or not—represent only one of the
relevant factors. See Long, 144 S.W.3d at 68–70; see also Voros, 856 S.W.2d at 762
(evidence in record, together with presumed facts from unrecorded in-chambers
interview, supported deviation from visitation guidelines).
          Nothing in Texas law states or implies that the ordinary standard of review of
legal and factual sufficiency of the evidence is disregarded when an appellate court
determines whether a trial court abused its discretion in modifying conservatorship. 
To the contrary, the ordinary standard does apply; and that standard holds that, in
considering the legal sufficiency of the evidence, we, as an appellate court, consider
only the evidence that supports the trial court’s findings, upholding the finder of
fact’s determination if supported by any probative evidence, and, in considering the
factual sufficiency of the evidence, we “examine all the evidence and reverse only if
the trial court’s finding is so against the great weight and preponderance of the
evidence as to be manifestly unjust.” Long, 144 S.W.3d at 67. Here, there is simply
no evidence in the record that removing Patterson as sole managing conservator and
appointing Brist was a positive improvement for C.A.B. and, therefore, in his best
interest, aside from the expression of C.A.B.’s wishes as to conservatorship, filed
with the trial court, and the presumption that facts expressed in the in-chambers
interview supported the trial court’s determination that C.A.B. wished to live with his
father and thus that modification was in C.A.B.’s best interest. The evidence and the
presumption together still do not constitute more than a scintilla of evidence that
modification was in C.A.B.’s best interest or that the trial court acted with reference
to any guiding principles in modifying the conservatorship order.
CONCLUSION
          I can find nothing in the record and nothing in controlling law that supports the
majority’s decision to affirm the trial court’s decision to divest Patterson of sole
managing conservatorship, name Brist joint managing conservator with the right to
choose C.A.B.’s residence, and order Patterson to pay child support to Brist, other
than the statement of preference of a 12-year-old child and the trial court’s arbitrary
and capricious determination—in defiance of the legal guidelines for determining the
child’s best interest and the absence of evidence supporting modification—that it was
in the “best interest” of that 12-year-old child to wrest him from the stable and loving
home in which he had lived since infancy, and in which he was thriving, and to move
him to a less stable household with much less emotional and physical support for him
and a worse quality of life under all applicable criteria, in a different county, away
from his home, town, school, and friends. Rather, the only reasonable inference from
the evidence is that the change was not a positive improvement, but a detriment to the
stability of C.A.B.’s home and surroundings, as well as to his physical, mental,
emotional, and economic welfare, hence to his best interest.
          Neither the trial court nor this Court seems to realize either the incredible
leverage their rulings give an irresponsible 12-year-old over his parents with respect
to his upbringing or, conversely, the intolerable burden they place on a responsible
12-year-old who is told he must tell the trial court he wants to live with his non-custodial parent because if he does not that parent will have to pay a lot of money to
the other parent, or, if he or she cannot pay, go to jail, devastating his or her current
family. Accordingly, I can interpret the decisions of the trial court and the panel
majority on this Court only as an abdication of judicial responsibility to protect the
best interest of a child caught between divorced parents. To my mind, this is an
exercise in judicial folly that can serve only as encouragement to other parents sued
by the Attorney General for child support to move to change conservatorship to the
“fun” household based solely on the child’s stated preference and to seek to offset
past-due support payments, avoid the risk of jail for non-payment, and supplement
the family income with support payments from the fit parent who is deprived of sole
managing conservatorship—all at the expense of the best interest of the child under
any objective standard. 
          In its wrongful disregard of the primacy of stability and the best interest of the
child as considerations in family conservatorship and possession matters, the plain
language of the modification of conservatorship statute, the established standard of
review of modification orders, and the binding precedent of this Court, and in its
establishment of the preference of a 12-year-old child and the whim of a family court
judge as sufficient criteria for modification of conservatorship, the majority opinion
works injustice not only in this case but in every future case in which conservatorship
of a child comes within its jurisdiction.
          I would hold that the trial court clearly erred in modifying the conservatorship
order. I would reverse the judgment of the trial court and render judgment that the
prior conservatorship order and prior child support order be reinstated and that the
criminal contempt order entered against Brist in accordance with the parties’
settlement agreement likewise be reinstated.




                                                             Evelyn V. Keyes
 Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.

Justice Hanks, concurring.

Justice Keyes, dissenting.

En banc consideration was requested. See Tex. R. App. P. 41.2(c).

A majority of the Court voted to deny en banc consideration. See id.

Justice Jennings, dissenting to the denial of en banc consideration.