**PEASLEE–GAULBERT CORP., Appellant,**

v.

**Mrs. Jean HILL, Appellee.**

No. 15374.

Court of Civil Appeals of Texas.

Dallas.

March 7, 1958.

Rehearing Denied April 4, 1958.

Matthews & Sligh, Tom D. Matthews, Dallas, for appellant.

Ungerman, Hill, Ungerman & Angrist, William Madden Hill, Melvin Yonack, Dallas, for appellee.

YOUNG, Justice.

Nature of the proceedings was trial of right to property, Rule 717 et seq., Texas Rules of Civil Procedure; appellant having caused a levy of execution pursuant to judgment against Charles H. Hill, Jr., of $831.47 on itemized merchandise as community property; appellee wife claiming same to be separately owned by her. On trial to the court, judgment was in favor of claimant, followed by this appeal.

The earlier judgment out of which the execution arose was rendered in Dallas County Court at Law No. 1 in a 1953 suit of Peaslee-Gaulbert Corporation against Charles H. Hill, Jr. and wife Mrs. Jean Hill, but provided that said plaintiff take nothing against Mrs. Hill. Following the levy of execution, Mrs. Hill duly filed her claimant's oath and bond, tendering the issue above stated; to effect that at time of said levy, September 13, 1956, the merchandise seized upon was part of her separate property and estate and not subject to debts of her husband Charles H. Hill, Jr.; plaintiff corporation contending to the contrary, i. e., that such was community property of said judgment debtor and claimant, and properly subject to the execution against him. Upon request of appellant, the trial court made and filed findings of fact and conclusions of law in support of the judgment complained of. The property on date of levy was valued by the Constable at $1,500, by claimant at approximately $10,000.

The controversy in factual background centers on the operation by Mrs. Hill of a small enterprise under the trade name of Texas Lawn Equipment; complying with the assumed name statute by a filed instrument reciting the concern as "Owned and conducted" by her; testifying that it was formed in 1953 on money personally borrowed from an individual and on her separate credit and account. In 1949 disabilities of coverture of Mrs. Jean Hill had been removed by judgment declaring her a feme sole for mercantile and trading purposes (art. 4626, Vernon's Ann.Civ.

St.).[1] Above business venture appears to have been abandoned by Mrs. Hill at close of 1956; she having placed the merchandise in question in a Dallas warehouse for return to Jacobsen Manufacturing Company, Racine, Wisconsin, as a credit on her account when the levy was made.

All material testimony came from appellee Mrs. Jean Hill, and is here summarized: That she was the daughter of John R. Black of Corsicana, who died some six years previously, leaving an estate in which she had a trust interest; that subsequent operation of Texas Lawn Equipment was financed by the First National Bank of Corsicana on notes signed by her alone. The first Bank transaction was represented by a deposit to her separate account in Empire State Bank, Dallas, of $20,000, March 1954, being proceeds of a loan to her by the First National Bank of Corsicana; next was a note of September 1954, $15,000, proceeds placed to credit of said concern. Further notes and renewals appear in the record—transactions either by Mrs. Hill personally or for credit of the Equipment company; for example, of

$40,000 in April 1955; $30,000 of August 1955, and $27,500 in February 1956. A series of checks appear, drawn by Mrs. Hill, Special Account, Empire State Bank, to order of Texas Lawn Equipment, between March 1954 and March 1955, totaling some $29,800. Bank account of the concern was with the First National Bank of Corsicana; and checks (one draft) payable to Jacobsen Manufacturing Company were given in payment for the merchandise in suit, beginning September 1955 through May 1956, totaling some $27,000; the sums so expended by Mrs. Hill representing, as she said, money borrowed from said First National Bank of Corsicana on her separate account and credit.

Balance Sheet of Texas Lawn Equipment in evidence as of December 31, 1956, showed inventory, accounts receivable, etc., of $28,901.42 (total assets $44,785.35); liabilities, principally notes and accounts payable, some $42,000; capital account (Jean Hill), $2,679.30. A sheet labeled "Statement of Income" of the concern from beginning of operation to December 31, 1956, is also in evidence—from which we quote in part:

| | | |
|---|---:|---:|
| "Sales | | $147,443.81 |
| Less: Cost of Sales | | |
|     Inventory, January 1, 1956 | $33,117.83 | |
|     Purchases | 77,616.60 | |
|     Freight on Purchases | 785.75 | |
|         Total | $111,520.18 | |
| Less Inventory December 31, 1956 | 11,808.64 | |
|     Cost of Sales | $ 99,711.54 | |
|     Gross Profit on Sales | | $ 47,732.27 |
| Miscellaneous Income | | 615.82 |
|     Gross Income | | $ 48,348.09 |
| * * *     * * * | | * * * |
| Net Income (Loss) | | $ 10,899.97" |

---

1. This Article provides in part: " * * * and thereafter she may, in her own name, contract and be contracted with, sue and be sued, and all of her separate property not exempt from execution under the laws of Texas shall thereafter be subject to her debts and liable under execution therefor, and her contracts and obligations shall be binding on her."

According to Mrs. Hill and as found by the trial court, Texas Lawn Equipment during its existence "has earned no net profits but on the other hand it has at all times operated at a loss, resulting in a loss of capital in such business and diminution of the assets and capital which was put in the business by Mrs. Jean Hill as proceeds of her personal borrowings from the Corsicana bank."

The further Court finding is not challenged, that above mentioned personal notes of Mrs. Hill to the First National Bank of Corsicana "were not signed by Charles Hill, Jr., her husband, and at no time was any credit by way of losses or otherwise extended to Charles H. Hill, Jr., either by any bank or by Jacobsen Manufacturing Company; nor such merchandise acquired in any form or manner through or as the result of the joint efforts of Mrs. Jean Hill and her husband Charles H. Hill, Jr."

■ Here we must refer to the court's mistaken finding that the "first" borrowing by Mrs. Hill was of $40,000 in April 1955. It is not disputed that her initial financing

of the Equipment company was through an "individual"; and that a 1954 loan of $15,000 from the First National Bank of Corsicana was for account of the same separate business. The statement of facts is therefore controlling over the court's said finding. Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156.

■ Appellant's points of appeal are based generally upon art. 4619, V.A.C.S., i. e., the presumption that all property acquired by either husband or wife during marriage by onerous title is community property; thereby imposing on the party claiming otherwise the burden of overcoming the presumption by clear and satisfactory evidence. Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226. When, in any particular controversy, separate property has not been commingled or its identity as such can be traced, the statutory presumption is thereby dispelled. See 21 Texas Digest, Husband and Wife, ■ pg. 261 et seq.

In more specific points [2], appellant argues that according to claimant's own book-

2. These points in full are quoted: "(1) There is no evidence that the First National Bank in Corsicana was Trustee of a trust for appellee, and the court erred in so finding. (2) Since the evidence shows that the business made a profit which was commingled with the original capital, and the merchandise in question became community property, the court erred in finding the property in question to be the separate property of the appellee. (3) Since the evidence introduced by Jean Hill proves the contrary, the court erred in finding that the business had earned no profits and has resulted in a loss of capital and diminution of assets and capital which was put in the business by appellee as proceeds of her personal borrowings from the Corsicana Bank. (4) The evidence does not disclose that the business has at all times operated at a loss, resulting in loss of capital and diminution of the assets and capital put in by Mrs. Jean Hill as proceeds of her personal borrowings from the First National Bank of Corsicana; and the court erred in so finding. (5) The trial court erred in holding that 'she and her separate estate were looked to for the pay-

ment of such loan.' (6) Since the evidence failed to show where the money came from to pay the checks issued in payment of the merchandise in question, the court erred in finding it came from loans made by Mrs. Jean Hill, appellee. (7) Since the appellee did not establish that her separate funds paid for the merchandise, the court erred in finding it to be her separate property. (8) Since the evidence does not show that the account of Texas Lawn Equipment company in the First National Bank of Corsicana was the result of borrowing by appellee on her own account, the court erred in so finding. (9) Since the burden of proof is on the appellee to establish her separate title, and she failed to refute the presumption that property in the name or possession of either husband or wife is community property, the court erred in its finding that Jean Hill paid for the merchandise in question with money borrowed and deposited in the First National Bank of Corsicana, and was entitled to title and possession, and that the property was not subject to levy for satisfaction of appellant's execution."

keeping, (1) there was an intermingling of assets in that the proceeds of sales of merchandise greatly exceeded the amount of her borrowings and likewise there was no proof "as to where the money came from to pay the checks drawn on the account for the merchandise in question." (2) And this, together with the fact that appellee's own statement of "Gross Income" from sales was $48,348.09, made applicable the rule of Schwethelm v. Schwethelm, Tex. Civ.App., 1 S.W.2d 911, and particularly of Smith v. Bailey, 66 Tex. 553, 1 S.W. 627, 628, that " * * * gross gains arising from any sales made of the stock, at a price over and above what it cost, must be held to constitute part of the community estate of the claimant and J. E. Bailey * * *."

■ However, in our opinion, an entirely different situation is presented here—one in which the property in suit is identified as separate by direct and positive testimony. The items levied upon did not constitute a part of the merchandise sold or intermingled, out of which sales of merchandise the so-called gross profits or income was derived. They were on hand when the business closed down, purchased, appellee testified, with funds realized as the result of her borrowings at the First National Bank of Corsicana on her sole personal credit, i. e., capital account. Testimony of like character was lacking in Hardee v. Vincent, 136 Tex. 99, 147 S.W.2d 1072, 1074; the Supreme Court holding in consequence: "Absent proof that the money so used came out of the *capital investment,* which is the state of the record, the presumption of the law, that property acquired by either husband or wife during marriage belongs to the community estate of the husband and wife, controls in the present case." (Emphasis ours.)

The trial court's findings and conclusions in favor of appellee for possession of the property here involved have sufficient support in the record, and the judgment to that effect is accordingly affirmed.