# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00385-CV

**Andrew Morris, Appellant**

**v.**

**Carrie Cecelia Veilleux, Appellee**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-19-000995, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Andrew Morris (Morris) appeals from a final decree of divorce. In three issues, Morris challenges the trial court's conservatorship order that appoints Carrie Cecelia Veilleux (Veilleux) the joint managing conservator with the exclusive right to establish the primary residence of their three children without geographic restriction and asserts that the trial court committed reversible error in its division of the marital estate. Neither party challenges the trial court's dissolution of the marriage or any other portion of the decree. We will affirm the trial court's challenged conservatorship determination. We will reverse the trial court's property division and remand that part of the decree to the trial court.

## BACKGROUND[1]

Morris and Veilleux met while in school in Arizona and were married in April 2004. Morris and Veilleux are the parents of three children; N.M., a daughter who was nine years old at the time of trial and Z.M. and E.M., a daughter and son who were both six years old at the time of trial. Morris and Veilleux moved to Austin for Veilleux to attend graduate school at the University of Texas. Morris and Veilleux planned to live in Austin until Veilleux graduated with a PhD in Anthropology, which she achieved in 2012. Veilleux's area of expertise is biological anthropology. Shortly after moving to Austin, Morris began working for the Austin Police Department and was a detective at the time of trial.

In February 2019, Morris moved out of the family residence. In May 2019, Veilleux filed a petition for divorce and requested that she be appointed the joint managing conservator with the exclusive right to designate the children's primary residence without geographic restriction. At a bench trial in April 2020, the trial court heard testimony of Veilleux; Morris; Anthony di Fiore, Chair of the University of Texas Anthropology Department; Laura Horton, one of Veilleux's friends; Brant Bradley, Morris's coworker and former roommate; and Roger Morris, Morris's father.

At conclusion of trial, the court granted the divorce and dissolved the marriage. The divorce decree appointed Veilleux and Morris as the children's joint managing conservators and granted Veilleux the exclusive right to designate the children's primary residence with no geographic restriction. The court divided the parties' community estate in which it included the

---

[1] The information in this section is derived from undisputed evidence presented at trial and from the court's unchallenged findings of fact.

entire net market value of a condominium on Wickersham Drive in Austin ("the Condominium").

Morris perfected this appeal in which he challenges the trial court's order granting Veilleux the exclusive right to designate the primary residence of the children without regard to geographic restriction and the trial court's property division.

## ANALYSIS

*Conservatorship*

In his first two issues on appeal, Morris challenges the legal and factual sufficiency of the evidence to support the trial court's order that Veilleux have the exclusive right to designate the children's primary residence without regard to geographic location. Morris argues that the evidence "overwhelmingly" showed that Morris was a "better more stable parent" and that the trial court should have instead appointed him the conservator with the right to establish the children's primary residence. Morris also argues that the court should have established a geographic area within which Veilleux could maintain the children's primary residence because a move from Austin was not in the children's best interest.

When a trial court appoints the parents joint managing conservators, it must designate the parent with the exclusive right to determine the child's primary residence and specify either the geographic area for the child's primary residence or that the child's primary residence may be without regard to geographic location. Tex. Fam. Code. § 153.134(b)(1). Suits affecting the parent-child relationship are "intensely fact driven" and require courts to balance many factors. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). The best interest of the child shall always be the

3

primary consideration of the court in determining issues of conservatorship and possession of and access to the child. Tex. Fam. Code § 153.002; *Lenz*, 79 S.W.3d at 14.

Trial courts have broad discretion to determine what is in a child's best interest. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). Similarly, trial courts have broad discretion in determining whether to specify a geographic limitation on a child's primary residence. *In re K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.). The trial court is in the best position to observe the witnesses and "can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record," and we will not disturb the trial court's order on appeal unless the complaining party establishes a clear abuse of discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (trial court's determinations on conservatorship and child support are reviewed for abuse of discretion).

To demonstrate an abuse of discretion, the appellant must show that the trial court acted in an arbitrary or unreasonable manner, or without reference to guiding principles of law. *Coleman*, 109 S.W.3d at 110. In reviewing a trial court's decision, we should bear in mind that the trial court "is in a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied). As long as some evidence of a substantive and probative character exists to support the order, we will not substitute our judgment for that of the trial court. *Echols*, 85 S.W.3d at 477. The mere fact that a trial court decided an issue in a manner differently from how an appellate court would under similar circumstances does not establish an abuse of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

4

Legal and factual sufficiency challenges are factors we consider in assessing whether the trial court abused its discretion, rather than constituting independent grounds of error. *Zeifman*, 212 S.W.3d at 587-88; *see J.R.D.*, 169 S.W.3d at 743. We ask first whether the court had sufficient information on which to exercise its discretion and second whether it erred in its application of that discretion. *Echols*, 85 S.W.3d at 477-78. "The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there." *Zeifman*, 212 S.W.3d at 588 (citing *Echols*, 85 S.W.3d at 478). The appellate court then determines whether, based on the evidence, the trial court made a reasonable decision, "that is, that the court's decision was neither arbitrary nor unreasonable." *Id.* A trial court does not abuse its discretion as long as some evidence of a probative nature exists to support the court's decision, *id.*, and we generally will not find an abuse of discretion when the trial court bases its decision on conflicting evidence, *see In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

To determine if the evidence is legally sufficient to support the trial court's exercise of discretion, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's findings only if they are so contrary to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Id.* at 826.

Because conservatorship determinations are intensely fact driven, trial courts generally have wide latitude in determining what is in a child's best interest. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). In *Lenz*, the supreme court discussed Texas's best-

5

interest standard in the context of a modification suit seeking to relocate the children, noting "the Legislature's overarching goals of assuring that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child and to provide a safe, stable, and nonviolent environment for the child." 79 S.W.3d at 14, 16 (citing Tex. Fam. Code § 153.001(a)); *see K.L.W.*, 301 S.W.3d at 425. The court held that the following factors were relevant considerations: reasons for and against the move; the effect the move would have on extended family relationships; its effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and the nature of the child's existing contact with both parents and the child's age, community ties, and health and educational needs. *Lenz*, 79 S.W.3d at 15-17. Although *Lenz* was a modification proceeding, the factors are equally applicable to this original suit for conservatorship in which the proposed custodial parent has determined an intended relocation destination. *See Norman v. Martin*, No. 03-17-00704-CV, 2019 WL 1388719, at *6 (Tex. App.—Austin Mar. 28, 2019, no pet.) (mem. op.); *Deinhart v. McGrath-Stroatman*, No. 03-09-00283-CV, 2010 WL 4595708, at *6-7 & n.5 (Tex. App.—Austin Nov. 10, 2010, pet. denied) (mem. op.) (applying *Lenz* factors to divorce case in which jury determined that mother should be allowed to relocate children to California); *Morgan v. Morgan*, 254 S.W.3d 485, 488 (Tex. App.—Beaumont 2008, no pet.).

In this case, the trial court entered findings of fact and conclusions of law in support of its order. Pertinent to the issue of whether Veilleux should be the conservator with the exclusive right to determine the children's primary residence without geographic restriction the trial court's findings are summarized as follows:

6

● Morris and Veilleux met at school at Arizona State University in Tempe Arizona. They married in 2004 and moved to Austin so that Veilleux could attend graduate school at the University of Texas.

● Morris and Veilleux planned to stay in Austin until Veilleux graduated with a PhD in Anthropology, which she did in 2012. A few years after moving to Austin, Morris began working for the Austin Police Department.

● Morris and Veilleux agreed that living in Austin was temporary until Veilleux graduated with a PhD and found a full-time faculty position at a university.

● In 2013, Veilleux and Morris's twin children were born 15 weeks prematurely and required a higher level of care than average babies. Veilleux put her career on hold to care for the twins while Morris continued working. The twins are now mostly healthy, but one has gastrointestinal issues that require supplemental feeding through a tube to ensure he is gaining weight. Veilleux has been the primary caregiver for the children.

● Throughout the marriage, Veilleux and Morris discussed available faculty positions across the country. Veilleux applied for jobs only in cities where both parents had potential job opportunities. In the fall of 2018, before separating, Veilleux and Morris discussed a tenure-track faculty job opening at Midwestern University in Arizona. Morris and Veilleux agreed that Veilleux should apply for the position, which she did. The university did not at that time make any offers for the position.

● Morris left the marital residence and the parties separated in February 2019. Morris was working a shift schedule as a police officer and the parties agreed to a possession schedule that allowed him to have possession of the children on his days off. Veilleux provided primary care for the children.

● In May 2019, Veilleux learned that Midwestern University in Arizona reopened the tenure-track faculty position she had applied for and Veilleux reapplied. Veilleux notified Morris that the position had reopened and that she had applied for it. The hiring process continued throughout the summer of 2019 with telephone and in person interviews. Morris was aware that Veilleux continued to pursue the position and raised no objection. Veilleux was offered a faculty position at the university in August 2019 and informed Morris that she intended to accept the offer. Morris raised no objection.

● By the time of trial, the university had scheduled Veilleux to begin teaching classes and had allocated funds for Veilleux's lab. The chair of the department of Anthropology at the University of Texas testified as to how difficult and time consuming it is for even an accomplished applicant with a PhD like Veilleux to obtain a tenure-track faculty position.

● Veilleux has substantially more opportunity for professional growth in Arizona than in Austin and the tenure-track position she was offered has a salary that is twice the amount she is paid for the temporary research position she held at the University of Texas at the time of trial.

● Morris has the ability to transfer to a police department in or around the Phoenix area near where Midwestern University is located. Morris's pension at the Austin Police Department is vested and he has the ability to cash out vacation and other accrued time if he were to leave the Austin Police Department. Morris began a new romantic relationship with a fellow police officer in February 2019 and that relationship is a factor in Morris's opposition to Veilleux's move despite the parties' years long understanding that the family would move for Veilleux's job.

● Veilleux has researched the school and activities available in the area near Midwestern University and plans to purchase a house in a Phoenix neighborhood with a good school district near a YMCA where the children can continue their swim lessons. One of the children's doctors recommended his mentor, the head of gastroenterology at the children's hospital in Phoenix, to provide specialized care for the child's gastrointestinal issues. The family enjoys hiking and camping together and the Phoenix area has many options for them to continue these activities.

● The children have a good relationship with both Morris's and Veilleux's extended family. Veilleux has maintained a positive relationship with Morris's family after the separation and the children's paternal grandfather testified that he intends to visit the children in Arizona and visit the Grand Canyon.

● The children have T-Mobile watches with Veilleux's, Morris's, and extended family members' phone numbers programmed in to ensure that the children have frequent and continuing communication with their family. The children actively use these watches.

● If Morris chooses not to relocate to Arizona, he has the ability to travel to Arizona monthly and have the children for prolonged periods of time in Texas during school breaks.

In its conclusions of law, the trial court determined:

[A]fter weighing the *Lenz* factors, Veilleux and children relocating for Veilleux's job is in the best interest of the children. If Morris resides over 100 miles away from the children, the Court concludes that it is in the best interest of the children for Morris to have the right to possession pursuant to the standard possession order. The Court also concludes that if Morris resides within 100 miles of the children, the parties' agreement to follow a 5-2-2-5 possession schedule is in the

8

best interest of the children. As an incentive to encourage Morris to visit the children in Arizona, the Court finds the allocation of travel costs in the final order is in the best interest of the children and the parties.[2]

The trial court, as the fact finder in this case, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819. In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.—El Paso 1998, no pet.). The unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). This Court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Lindsey*, 965 S.W.2d at 591.

The trial court's extensive findings of fact affirmatively demonstrate that it considered the relevant factors listed in family code section 153.001(a) and applicable factors discussed in *Holley* and *Lenz*. *See* Tex. Fam. Code § 153.001(a); *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976); *Lenz*, 79 S.W.3d at 15-16.[3] Those findings of fact are supported by the record. Additionally, the findings of fact support the court's conclusion of law that it is in the children's best interest that Veilleux be appointed the joint managing conservator with the exclusive right to designate the children's primary residence without geographic restriction.

In his brief on appeal, Morris does not challenge any of the trial court's findings of fact. Instead, he asserts that he should have been appointed the joint managing conservator

---

[2] The final order requires Veilleux to reimburse Morris for certain travel expenses.
[3] The absence of a specific finding on a relevant factor does not show that the trial court did not consider that factor. *See In re Marriage of Walker*, No. 07-03-0531-CV, 2005 WL 3488931, at *4 n.3 (Tex. App.—Amarillo Dec. 20, 2005, no pet.) (mem. op.).

with the exclusive right to establish the children's primary residence because his household is "safer, more stable and nonviolent" than Veilleux's; he is a police officer who has worked his way up from the bottom of the Austin Police Department over the past twelve years; he has played an active role in the children's everyday life; and his parenting approach has been successful and allowed the children to thrive. Morris references his own trial testimony that Veilleux has a history of self-harm, is insecure, and engaged in what he considered to be manipulative behavior during arguments. Morris testified that their oldest child witnessed Veilleux pretend to hang herself from a doorknob with a scarf and later imitated this behavior. Morris asserts that Veilleux's "dangerous, toxic behaviors have no doubt already shaped the children [] in ways that will haunt them for the rest of their lives." Yet Morris also testified that he never requested that Veilleux undergo a psychological evaluation and agreed that he did not express his concerns about Veilleux's behavior during his deposition or at the temporary orders hearing. Morris also testified that if Veilleux were required to establish the children's primary residence in Austin, he believed that the children should divide their time equally between his household and Veilleux's.

The trial court heard testimony from Morris's father that Veilleux is a good parent and from Veilleux's friend that she is a proactive and involved parent. The friend stated that Veilleux coordinates all three children's therapies, appointments, and activities and described Veilleux's creativity and the activities she engages in with the children. Veilleux also testified that both she and Morris have a history of mental health problems and that she sees a therapist weekly and takes medication to treat anxiety and depression. Veilleux testified that she does not believe the mental health issues affect either her or Morris's parenting ability. Veilleux stated

10

that the therapy and medication have "completely changed her life" and allowed her to be "calm and happy" even in stressful situations.

The trial court could have reasonably concluded that Morris's testimony that Veilleux was not a fit parent was not credible. The evidence presented at trial established that Veilleux had a history of being the primary caretaker for the children and that Morris had no objection to both parents having equal possession of the children. In determining which conservator will have the exclusive right to establish primary residence under section 153.134(b), the trial court is vested with broad discretion. *Dennis v. Smith*, 962 S.W.2d 67, 70 (Tex. App.—Houston [1st Dist.] 1997, pet. denied); *see Gardner v. Gardner*, 229 S.W.3d 747, 753-54 (Tex. App.—San Antonio 2007, no pet.) (no abuse of discretion to award husband, non-parent, right to establish primary residence of children without regard to geographic location); *Long v. Long*, 144 S.W.3d 64, 70-71 (Tex. App.—El Paso 2004, no pet.) (affirming trial court's order awarding father right to establish primary residence of children without regard to geographic location). After reviewing the record, we conclude the trial court had sufficient evidence upon which to exercise its discretion and, based on the evidence concerning all relevant circumstances at the time of the bench trial, did not abuse that discretion in finding that it was in the children's best interest for Veilleux to be designated the conservator with the exclusive right to determine the children's primary residence without geographic restriction. We overrule Morris's first and second issues.

### Community Property Division

In his third issue, Morris challenges the trial court's division of community property, specifically its inclusion of the value of the Condominium in making its just and right

11

division of the community estate. The trial court found that the total net value of the marital estate was $448,072.60 of which $131,000 was attributable to the Condominium's net value. The trial court awarded Morris assets valued at $228,725.72, representing 51% of the value of the marital estate. Included in the assets awarded Morris was the Condominium, valued at $131,000. Morris contends that the Condominium was not part of the marital estate subject to the just and right division, and if that asset was removed from the ledger of community assets, he was awarded only 30% of the marital estate.

We review the trial court's property division for abuse of discretion. *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). This discretion is broad. *Raymond v. Raymond*, 190 S.W.3d 77, 82 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "The test of whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably, and without reference to any guiding principles." *Hailey v. Hailey*, 176 S.W.3d 374, 380 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "If the division of marital property lacks sufficient evidence in the record to support it, then the trial court's division is an abuse of discretion." *Raymond*, 190 S.W.3d at 83. Nonetheless, "[u]nder an abuse of discretion standard, legal and factual insufficiency are not independent reversible grounds of error but rather are relevant factors in assessing whether the trial court abused its discretion." *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex. App.—Houston [1st Dist.] 1993, no writ). If we find reversible error that materially affects the trial court's just and right division of community property, we must remand the cause for a new division of the community estate. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Raymond*, 190 S.W.3d at 82.

The trial court made the following fact findings regarding the Condominium:

12

● When Morris and Veilleux realized it would likely take eight years for Veilleux to achieve her PhD, [they] decided that they wanted to own a home and build equity, rather than continuing to live in an apartment. They found the Condominium, and entered into an earnest money contract to purchase it. The parties intended for the Condominium to belong to them. During the option period, Morris and Veilleux learned that they did not qualify for the mortgage on their own so Roger Morris, Morris's father, stepped in to assist Morris and Veilleux to buy the Condominium.

● The underwriter would not allow Roger Morris to become involved in the purchase solely as a co-signer. When the parties closed on the Condominium purchase, Roger Morris was the only individual who signed the note and is named on the Deed of Trust but title to the Condominium was taken in the names of Roger Morris, Veilleux, and Morris.

● Subsequently, a "Correction Deed" was filed in the Travis County Real Property Record. The Correction Deed was the same deed filed previously, but with Veilleux's and Morris's names crossed through. Neither Veilleux nor Morris signed the Correction Deed, and there is no credible evidence that they were aware of the Correction Deed prior to the divorce proceeding.

We first consider whether the Condominium was community property. The character of property as community property is determined at inception of title. Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Rivera v. Hernandez*, 441 S.W.3d 413, 420 (Tex. App.—El Paso 2014, pet. denied). Property possessed by either spouse upon dissolution of the marriage is presumptively community property. *Peaslee-Gaulbert Corp. v. Hill*, 311 S.W.2d 461 (Tex. App.—Dallas 1958, no writ). However, this presumption may be rebutted by proof that the property was the separate property of either spouse. *McClintic v. Midland Grocery & Dry Goods Co.*, 154 S.W.1157 (Tex. 1913). No evidence at trial served to rebut the presumption that any interest Veilleux and Morris had in the Condominium was community property.

On appeal, Morris does not argue that the Condominium is separate property but, instead, maintains that neither he nor Veilleux own the Condominium. To support this

contention, Morris asserts that although title was originally taken in the names of Morris, Veilleux, and Roger Morris, the subsequently filed Correction Deed divested Morris and Veilleux of any interest in the Condominium. Morris argues that because of the Correction Deed, the Condominium belongs solely to Roger Morris and should not have been included in the marital estate.

In its conclusions of law, however, the trial court determined that "the Correction Deed is invalid." The court relied on Texas Property Code section 5.029, which provides that a correction instrument must be "executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct." *See* Tex. Prop. Code § 5.029. Because Morris and Veilleux did not sign the Correction Deed, and in fact had no knowledge of its existence, the trial court concluded that it had no effect on the Condominium's ownership.

On appeal, Morris asserts that the trial court could not have determined whether the Correction Deed was effective because Veilleux did not bring a trespass-to-try title claim, which is the exclusive method in Texas for adjudicating disputed claims of title to real property. *See Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384 (Tex. 2011). In this divorce proceeding, however, Veilleux did not seek to adjudicate title to the Condominium but rather sought a just and right division of the marital estate. Moreover, the trial court's final order does not purport to adjudicate title to the Condominium. Instead, it characterizes any interest that Morris and Veilleux have in the Condominium as community property and then divests Veilleux of her right, title, and interest in the Condominium in favor of Morris. In doing so, the trial court rejected Morris's assertion that the Correction Deed had effectively divested Morris and Veilleux of their community interest in the Condominium. If any party raised issues about the ownership of the Condominium, it was Morris rather than Veilleux. When a party requests a trial court to

14

take an action, the doctrine of invited error prohibits that party from complaining of the claimed error on appeal. *In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009).

Having concluded that the Correction Deed was ineffective to divest Veilleux and Morris of their interest in the Condominium, the trial court included the total net value of that property in its division of the marital estate rather than excluding the value of any interest held by Roger Morris, which presumably would be one-third of the Condominium's value.[4] The trial court found that Roger Morris held title to the Condominium "as a constructive trustee for the benefit of Veilleux and Morris" and that he individually did not have an ownership interest in it. *See Tuck v. Miller*, 483 S.W.2d 898, 905 (Tex. App.—Austin 1972, writ ref'd n.r.e.) (when one person orally undertakes to purchase land on behalf of another, "a constructive trust may be enforced based upon the violation of a fiduciary duty"). On appeal, Morris asserts that the trial court erred by concluding that Roger Morris held the Condominium in a constructive trust for Veilleux and Morris. We agree.

A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex. App.—Fort Worth 2002, no pet.). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.—Corpus Christi

---

[4] We make this presumption for purposes of this appeal based on the inclusion of three owners in the original conveyance. When a deed is made to more than one grantee and the interest of each is not stated, a rebuttable presumption arises that each of the grantees is vested with title to an equal undivided interest in the property. *Estate Land Co. v. Wiese*, No. 14-13-00524-CV, 2015 WL 1061553, at *6 (Tex. App.—Houston [14th Dist.] Mar. 10, 2015, pet. denied) (mem. op.) (citing *Zephyr v. Zephyr*, 679 S.W.2d 553, 556 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The parties may, however, present evidence on remand establishing a different division of ownership interests.

2002, pet. denied). The proponent of a constructive trust must strictly prove the elements necessary for the imposition of the trust. *See e.g.*, *Ginther v. Taub*, 675 S.W.2d 724, 725 (Tex. 1984) (requiring strict proof of unfair conduct or unjust enrichment on part of wrongdoer). Here, there was no evidence that raised a fact issue as to whether Roger Morris breached any duty to Veilleux or Morris. To impose a constructive trust, a breach of a duty or actual or constructive fraud must be present. *In re Marriage of Braddock*, 64 S.W.3d 581, 586 (Tex. App.—Texarkana 2001, no pet.). The trial court erred in imposing a constructive trust on Roger Morris's ownership interest in the Condominium.

Section 7.001 of the Texas Family Code provides that a divorce decree "shall order a division of the estate of the parties in a manner that the court deems just and right." Tex. Fam. Code § 7.001. The "estate of the parties" has been construed to mean only the parties' community property. *See Cameron v. Cameron*, 641 S.W.2d 210, 213-14 (Tex. 1982); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977). The trial court has wide discretion in dividing the parties' community estate and that division should not be altered on appeal except where a clear abuse of discretion is shown. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Here, the trial court determined that a just and right division of the parties' community property would be to award 49% of it to Veilleux and 51% of it to Morris. We cannot say that this division of the community estate constitutes an abuse of discretion. However, because the trial court erroneously valued the community interest in the Condominium to be its full market value, rather than the value of Morris's and Veilleux's interest as reflected in the Deed—presumably two thirds of the total value—the trial court increased the total net value of both the community estate and the value of the assets awarded to Morris. When the value of Roger Morris's ownership interest in the Condominium is deducted from both the net value of the

16

community estate and the value of the assets awarded to Morris, the resulting division of community property is 54% to Veilleux and 46% to Morris. This is significantly different from the division the trial court concluded was a just and right division when it rendered its final orders. When the trial court's error in characterizing property materially affects the trial court's just and right division, then the mischaracterization is harmful and requires the appellate court to remand the entire community estate to the trial court for a just and right division of the properly characterized community property. *McElwee v. McElwee*, 911 S.W.2d 182, 190 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

We cannot presume that the trial court would have made the same division despite the mischaracterization of the value of the parties' interest in the Condominium. At rendition, the trial court intended to make an approximately 49%/51% division in Morris's favor. By failing to properly value the community interest in the Condominium, however, the court actually made an approximate 54%/46% division in Veilleux's favor. We do not suggest that, under the facts of this case, the trial court did not have the power to make a disproportionate division. However, only the trial court has the power to make a just and right division of the community estate. *Jacobs*, 687 S.W.2d at 733; *McKnight v. McKnight*, 543 S.W.2d 863, 865 (Tex. 1976) (stating "a court of civil appeals has no authority to render its own property division"). In *McElwee*, the court observed that failing to remand the case when a mischaracterization changes the division of community property would permit the appellate court to "award a completely new division of the community estate," a power the appellate court does not have. *See McElwee*, 911 S.W.2d at 190 (remanding case to trial court when correcting mischaracterized property changed division from 61%/39% to 64%/36% division). When a mischaracterization has more than a mere *de minimis* effect on the trial court's division, we must

17

remand the community estate to the trial court for a just and right division based on the correct characterization of property. *Id*.

In this case, the trial court's error affected the court's property division. We therefore sustain Morris's third issue and reverse and remand that part of the judgment to the trial court with instructions that the trial court make a just and right division of the marital estate.

## CONCLUSION

For the reasons stated in this opinion, we affirm the portion of the trial court's order appointing Veilleux the joint managing conservator with the exclusive right to establish the primary residence of the children without geographic restriction. We reverse the portion of the trial court's order pertaining to the property division and remand that part of the judgment to the trial court with instructions that the trial court make a just and right division of the marital estate. In all other respects, the trial court's decree of divorce is affirmed.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justice Baker and Smith

Affirmed in Part, Reversed and Remanded in Part

Filed:   September 24, 2021

18