# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00358-CV

**Lauren Nicole Billisits, Appellant**

**v.**

**Nathan George Billisits, Appellee**

### FROM THE 169TH DISTRICT COURT OF BELL COUNTY
### NO. 315463, THE HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lauren Nicole Billisits (Lauren) appeals from a final decree of divorce. In two issues, Lauren challenges the portion of the trial court's divorce decree that appoints Nathan George Billisits (Nathan) the joint managing conservator with the exclusive right to establish the primary residence of their two children without geographic restriction.[1] Neither party challenges the trial court's dissolution of the marriage, its division of the marital estate, or any other portion of the decree. We will affirm the trial court's challenged conservatorship determination.

## BACKGROUND[2]

Lauren and Nathan met while in school in Ohio and were married there in August 2014 after Nathan graduated from West Point Academy. Lauren and Nathan are the parents of

---

[1] Because the parties share a surname, we will refer to them by their given names for clarity.

[2] The information in this section is derived from undisputed evidence presented at trial and from the court's unchallenged findings of fact.

two children: N.G.B., a son who was born in February 2015, and A.G.B., a daughter who was born in January 2017 while Nathan was pursuing his career as an officer in the Army. During his six-year military career, Nathan was stationed in Georgia and Louisiana. In February 2018, Nathan was stationed at Fort Hood, Texas, and he and Lauren purchased and lived in a home in Belton. In August 2019, Lauren began to pursue her nursing degree at Concordia University in Austin, Texas, with a planned graduation date in December 2020. In September 2019, Lauren and Nathan agreed that he would leave military service in the fall of 2020. In January 2020, Lauren informed Nathan that she wanted to separate. Nathan filed for divorce in February 2020 after discovering what he believed to be messages to Lauren from other men on a laptop she had given him permission to use.

At a bench trial that took place as a series of settings over an 11-month span, the trial court heard the testimony of Lauren; Nathan; Lauren's parents; Nathan's mother; and Fraser Ramseyer, Lauren's boyfriend. At conclusion of trial, the court granted the divorce and dissolved the marriage. The divorce decree appointed Lauren and Nathan as the children's joint managing conservators and granted Nathan the exclusive right to designate the children's primary residence with no geographic restriction. Lauren timely perfected this appeal.

**ANALYSIS**

On appeal, Lauren challenges the factual sufficiency of the evidence supporting the trial court's order that Nathan have the exclusive right to designate the children's primary residence and asserts that the trial court erred by failing to impose a geographical restriction. Lauren argues that she should have been appointed the conservator with the right to establish the children's residence because the children are "more connected" to her than to Nathan and they are "the most adjusted" living with her. Lauren also argues that the court should have

2

established a geographic area within which Nathan could maintain the children's primary residence because a move from Austin was not in the children's best interest.

When a trial court appoints the parents joint managing conservators, it must designate the parent with the exclusive right to determine the child's primary residence and specify either the geographic area for the child's primary residence or that the child's primary residence may be without regard to geographic location. Tex. Fam. Code § 153.134(b)(1). The best interest of the child shall always be the primary consideration of the court in determining issues of conservatorship and possession of and access to the child. *Id.* § 153.002; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). Suits affecting the parent-child relationship are "intensely fact driven" and require courts to balance many factors. *Lenz*, 79 S.W.3d at 19.

Trial courts have broad discretion to determine what is in a child's best interest. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). Similarly, trial courts have broad discretion in determining whether to specify a geographic limitation on a child's primary residence. *In re K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.). The trial court is in the best position to observe the witnesses and "can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record," and we will not disturb the trial court's order on appeal unless the complaining party establishes a clear abuse of discretion. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (trial court's determinations on conservatorship and child support are reviewed for abuse of discretion).

To demonstrate an abuse of discretion, the appellant must show that the trial court acted in an arbitrary or unreasonable manner, or without regard to guiding principles of law. *Coleman*, 109 S.W.3d at 110. In reviewing a trial court's decision, we should bear in mind that

3

the trial court "is in a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.— Austin 2005, pet. denied). As long as some evidence of a substantive and probative character exists to support the order, we will not substitute our judgment for the trial court's. *Echols*, 85 S.W.3d at 477. The mere fact that a trial court decided an issue in a manner differently from how an appellate court would under similar circumstances does not establish an abuse of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

Legal and factual sufficiency challenges are factors we consider in assessing whether the trial court abused its discretion, rather than constituting independent grounds of error. *Id.* at 587-88; *see J.R.D.*, 169 S.W.3d at 743. We ask first whether the court had sufficient information on which to exercise its discretion and second whether it erred in its application of that discretion. *Echols*, 85 S.W.3d at 477-78. "The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there." *Zeifman*, 212 S.W.3d at 588 (citing *Echols*, 85 S.W.3d at 478). The appellate court then determines whether, based on the evidence, the trial court made a reasonable decision, "that is, that the court's decision was neither arbitrary nor unreasonable." *Id.* A trial court does not abuse its discretion as long as some evidence of a probative nature exists to support the court's decision, *id.*, and we generally will not find an abuse of discretion when the trial court bases its decision on conflicting evidence, *see In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's findings only if they are so contrary

4

to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Zeifman*, 212 S.W.3d at 588-89.

Because conservatorship determinations are intensely fact driven, trial courts generally have wide latitude in determining what is in a child's best interest. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). In *Lenz*, the supreme court discussed Texas's best-interest standard in the context of a modification suit seeking to relocate the children, noting "the Legislature's overarching goals of assuring that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child and to provide a safe, stable, and nonviolent environment for the child." 79 S.W.3d at 14, 16 (citing Tex. Fam. Code § 153.001(a)); *see K.L.W.*, 301 S.W.3d at 425. The court held that the following factors were relevant considerations: reasons for and against the move; the effect the move would have on extended family relationships; its effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and the nature of the child's age, community ties, and health and educational needs. *Lenz*, 79 S.W.3d at 15-17. Although *Lenz* was a modification proceeding, the factors are equally applicable to this original suit for conservatorship in which the proposed custodial parent has determined an intended relocation destination. *See Norman v. Martin*, No. 03-17-00704-CV, 2019 WL 1388719, at *6 (Tex. App.—Austin Mar. 28, 2019, no pet.) (mem. op.); *Deinhart v. McGrath-Stroatman*, No. 03-09-00283-CV, 2010 WL 4595708, at *6-7 & n.5 (Tex. App.—Austin Nov. 10, 2010, pet. denied) (mem. op.) (applying *Lenz* factors to divorce case in which jury determined that mother should be allowed to relocate children to California); *Morgan v. Morgan*, 254 S.W.3d 485, 488 (Tex. App.—Beaumont 2008, no pet.).

5

In this case, the trial court entered findings of fact and conclusions of law in support of its order. Pertinent to the issue of whether Nathan should be the conservator with the exclusive right to determine the children's primary residence without geographic restriction, the trial court's findings are summarized as follows:

● Nathan and Lauren are from Ohio and were married in August 2014. They are the parents of two children, N.G.B. and A.G.B. Nathan has been stationed at various duty stations in the United States during the marriage as well as having been deployed overseas. Nathan was employed as an active duty officer in the United States Army stationed at Fort Hood, Texas at the time of the divorce filing in February 2020.

● N.G.B. and A.G.B.'s paternal and maternal grandparents reside near each other in Ohio. Both the paternal and maternal grandparents have been actively involved in the children's lives, have helped care for the children, and the children have regularly visited and stayed with or near them in Ohio.

● Nathan and Lauren shared child rearing responsibilities during the marriage up to the time Nathan was stationed at Fort Hood except when Nathan was deployed, during which time Lauren was primarily responsible for the children's care. Nathan and Lauren and their children lived in a house they purchased in Belton. In August 2019, Lauren began attending nursing school at Concordia University in Austin and commuted to classes from Belton. In 2019 and early 2020, Nathan and Lauren began discussing Nathan's leaving his military career and determined that Nathan would leave the army and find a civilian job in August 2020.

● Nathan explored the possibility of civilian employment in Texas and in Ohio, planning for the family to remain together until he discovered that Lauren had engaged in extramarital affairs. Nathan initiated a divorce proceeding in February 2020, and he and Lauren agreed that the children would continue to live in the Belton house and continue to attend their respective schools while the parents would rotate staying with the children in the Belton home on an equal time basis. During that time, Lauren leased a condominium in Austin.

● Nathan presented evidence at trial that, during the pendency of the divorce proceeding, he was primarily responsible for the children due to Lauren's school and other social activities. Fraser Ramseyer was called to testify at trial and stated that he and Lauren had begun a romantic relationship; that he and she had travelled with the children to Ohio together during a Thanksgiving 2020 trip to visit Lauren's parents and his family, who also lived in Ohio; and that he, Lauren, and the children had stayed in a hotel room together during the trip.

6

● The trip to Ohio effectively denied Nathan court-ordered possession of the children during the Thanksgiving 2020 holiday.

● Ramseyer stayed overnight at Lauren's residence in Austin on multiple occasions when Lauren was in possession of the children, in violation of a Bell County Standing Order. Lauren continued to permit Ramseyer to stay overnight with her and the children and testified that it would do more harm to the children to remove Ramseyer from their lives than to follow the Bell County Standing Order. Lauren testified that she intends to move into a house owned by Ramseyer and would raise the children in that home. Lauren intends to remain in the Austin area and does not intend to relocate to Ohio although she testified that she could obtain a license to work as a nurse in Ohio. Nathan testified that Lauren could obtain quality employment in the nursing field in Ohio that would allow her to live in close proximity to the children after the divorce.

● In October 2020, Nathan was offered an executive position at Procter & Gamble in Cincinnati, Ohio. He accepted the position and relocated to Ohio with the understanding that the divorce and custody dispute would soon be resolved. The Covid-19 pandemic emergency orders caused the final hearing to be conducted remotely over a variety of days spanning from July 9, 2020, to May 17, 2021. In November 2020, the trial court made an Interim Temporary Order giving Lauren temporary primary residence of the children in order to ensure the children's stability while still enabling Nathan to begin employment at Procter & Gamble.

● Both maternal and paternal grandparents are involved in the children's lives both in Ohio and in Texas. Nathan's mother testified that he has been very involved in the daily lives of the children and directly responsible for their care. Lauren testified that she historically has been the parent to arrange and provide for all medical and dental appointments for the children during the marriage and that Nathan was a good father capable of taking care of the children's primary needs. Nathan testified that he participated significantly in the educational upbringing of the children since being stationed at Fort Hood and that Lauren was a good mother to the children but had started frequently staying overnight in Austin when she enrolled in nursing school.

● Living with Nathan in Ohio would provide structure and stability to the children. Nathan's work schedule provides for a more stable schedule for the children than Lauren's work schedule. Nathan had the ability to deliver and retrieve the children from school on a daily basis whereas Lauren relied on child care or Ramseyer to assist her with transportation. Nathan has arranged for the children to attend Hopewell Elementary School upon relocation to Ohio.

● Lauren failed to inform Nathan of educational and behavioral issues N.G.B. was having at school while in her possession in Austin. N.G.B. was struggling significantly and having significant behavioral problems in the new school.

Nathan is the party most likely to foster a co-parenting relationship and the most likely to include the other parent in significant decisions concerning the children. Neither party has any ties or connections to Texas other than by virtue of Nathan's military assignment to Fort Hood. Lauren could relocate to live near the children in Ohio.

In its conclusions of law, the trial court determined:

It is in the best interest of the children that the father and mother be appointed joint managing conservators of the children with the father having the exclusive right to designate the children's primary residence without regard to geographic restriction.

The trial court, as the fact finder in this case, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.—El Paso 1998, no pet.). The unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). This Court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings.

The trial court's extensive findings of fact affirmatively demonstrate that it considered the relevant factors listed in family code section 153.001(a) and applicable factors discussed in *Holley* and *Lenz*. *See* Tex. Fam. Code § 153.001(a); *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976); *Lenz*, 79 S.W.3d at 15-16.[3] Those findings of fact are supported by the

---

[3] The absence of a specific finding on a relevant factor does not show that the trial court did not consider that factor. *See In re Marriage of Walker*, No. 07-03-0531-CV, 2005 WL 3488931, at *4 n.3 (Tex. App.—Amarillo Dec. 20, 2005, no pet.) (mem. op.).

record. Additionally, the findings of fact and the evidence presented at trial support the court's conclusion of law that it is in the children's best interest that Nathan be appointed the joint managing conservator with the exclusive right to designate the children's primary residence without geographic restriction. Specifically, the trial court was presented with evidence of extended family support for the children in Ohio; the parents' and children's familiarity with the geographic area to which Nathan intends to move; Nathan's employment opportunities in Ohio; the children's and Nathan's lack of ties to Texas or the Austin area; and Lauren's ability to work in Ohio or, alternatively, travel to Ohio, where she has roots and family, to spend time with the children. The trial court could reasonably have determined that the alternative—living in Austin with Lauren and her boyfriend in a home owned solely by the boyfriend, continuing to attend a school where N.G.B. has exhibited significant behavioral difficulties, and living far away from their father and grandparents—was not in the children's best interest, even though there was evidence presented at trial that the children are bonded to both Lauren and her boyfriend and enjoy activities available in Austin.

In her brief on appeal, Lauren does not challenge any of the trial court's underlying findings of fact. Instead, she asserts that she should have been appointed the joint managing conservator with the exclusive right to establish the children's primary residence because (1) there was evidence at trial that she was their primary caregiver since their birth while Nathan was "largely absent" during his military career; (2) Lauren "has considerably more solo-parental experience while Nathan has next-to-none"; (3) there was no evidence that Lauren's exposing her children to her boyfriend harmed the children in any way; and (4) there was unrebutted testimony that the children were emotionally bonded with her boyfriend and that their pooled resources provided a stable, safe, and healthy home. The trial court made extensive

9

findings about the parents' respective parenting abilities, including that Nathan has actively participated in parenting the children and has been their primary caregiver since Lauren began attending nursing school. The trial court's findings also note the family support Nathan will receive from both paternal and maternal grandparents in Ohio. The evidence Lauren points to does not establish that the trial court's findings are unsupported by the evidence admitted at trial or that its determination that it was in the children's best interest that Nathan be appointed the conservator with the right to establish the children's primary residence was an abuse of its discretion. In determining which conservator will have the exclusive right to establish primary residence under section 153.134(b), the trial court is vested with broad discretion. *Dennis v. Smith*, 962 S.W.2d 67, 70 (Tex. App.—Houston [1st Dist.] 1997, pet. denied); *see Gardner v. Gardner*, 229 S.W.3d 747, 753-54 (Tex. App.—San Antonio 2007, no pet.) (no abuse of discretion to award husband, non-parent, right to establish primary residence of children without regard to geographic location); *Long v. Long*, 144 S.W.3d 64, 70-71 (Tex. App.—El Paso 2004, no pet.) (affirming trial court's awarding father right to establish primary residence of children without regard to geographic location).

Regarding the trial court's determination not to impose a geographic restriction, Lauren argues principally that the children are well-settled in Austin and Nathan failed to show any justifiable reason for relocating to Ohio. The trial court made findings, however, that N.G.B. was having significant behavioral difficulties at school in Austin; that Nathan had secured an executive position at a company in Cincinnati, Ohio; that both sets of grandparents resided in Ohio and had historically been actively involved in the children's lives; and that Lauren could also relocate to live near the children in Ohio but instead intends to remain in Austin. The trial

10

court found that Nathan was more likely to foster a co-parenting relationship and include the other parent in significant decisions concerning the children.

As in any custody case, there are often no perfect solutions when parties divorce or separate, and the trial court here was tasked with making a difficult decision that will have an impact on Lauren, Nathan, their children, and their extended families. *See generally Fuentes v. Jasso*, No. 08-03-00109-CV, 2004 WL 1078498, at *2-3 (Tex. App.—El Paso May 13, 2004, no pet.) (mem. op.) (recognizing "painful reality" that when two devoted parents are divorced, it is inevitable that hard choices must be made with regard to custody decisions). However, our job is not to second-guess the trial court's decision or express how we might have ruled differently; instead, our job is to ensure that the trial court did not act unreasonably, arbitrarily, or without reference to guiding principles of family law in reaching its decision.

After reviewing the record, we conclude the trial court had sufficient evidence upon which to exercise its discretion and, based on the evidence concerning all relevant circumstances at the time of the bench trial, did not abuse that discretion in finding that it was in the children's best interest for Nathan to be designated the conservator with the exclusive right to determine the children's primary residence without regard to geographic restriction. We overrule Lauren's two appellate issues.

## CONCLUSION

Having overruled both appellate issues presented, we affirm the trial court's order appointing Nathan George Billisits the joint managing conservator with the exclusive right to establish the primary residence of the children, N.G.B. and A.G.B., without geographic restriction.

11

_____
Thomas J. Baker, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   February 24, 2023